STATE of Missouri, Respondent,

v.

Glenn B. MANSFIELD, Appellant.

No. 62949.

Supreme Court of Missouri,
En Banc.

Aug. 31, 1982.

J. D. Williamson, Jr., Independence, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Appellant Glenn Mansfield was charged with conventional murder in the second degree (§ 565.004, RSMo 1978), tried by jury and convicted of the charge with punishment assessed at life imprisonment. The court entered judgment in accordance with the verdict and Mansfield appeals. Jurisdiction is in this Court, Mo. Const. art. V, § 3.

The issue dispositive of this appeal concerns the refusal of the trial court to permit one Geneva Abbott (nee Poindexter) to testify in defense as an alibi witness.

The cause was submitted to the jury by an instruction on second-degree murder which provided in paragraph first for a jury to find that the deceased was killed "between 11:50 p.m. February 8, 1980 [Friday] and 4:00 p.m. February 10, 1980, [Sunday] . . ."

The body of Ms. Louise Byers was found on Sunday, February 10, 1980, at about 4:00

p.m. by Patricia Boesch, an acquaintance of the deceased. Herbert Leonard, the deceased's son-in-law testified he spoke to the deceased on the phone about 4:00 p.m. on Saturday, February 9.

The county medical examiner testified that the deceased died as a result of multiple blunt force injuries to the body, primarily to the head and chest. With respect to the time of death, her final answer was that she had insufficient evidence to tell when the deceased died.

A statement given to the police by appellant was testified to by a Sergeant Rice. Sergeant Rice gave the following account of that statement. Appellant lived with his mother a few houses west of the deceased. He had been in the deceased's home three times in the years he had known her. The first two times were years earlier and the third time was on Friday, February 8, 1980, at about midnight. Appellant said he was returning to his home that Friday night when he saw two men running from the deceased's home. He then walked over to her house and went in. He walked around the first floor and then went part way up the staircase and at that time saw the deceased's body lying at the top of the stairs. He immediately ran out of the house and back to his own home. This testimony places the time of death at about midnight Friday, February 8, 1980. The sergeant also stated the appellant said he stayed at his home (his mother's house) on the nights of Thursday, February 7; Friday, February 8; and Saturday, February 9. He stated he was at Geneva Poindexter's house at 76th and Monroe on Sunday, February 10, but did not state the time that he arrived there. It was sometime on the 10th. He also said he stayed with Geneva Poindexter on Sunday night, February 10, 1980.

Several witnesses testified to places of appellant's presence at various times from Friday, February 8, through Sunday, February 10.

Appellant testified at trial. He said he went to visit his grandmother after work on Friday, February 8, at about 2:00 p.m. She lives in an apartment on the second floor of the same building appellant lives in. He stayed with her until around 6:30 to 7:00 p.m. when he went to see his former wife, Debra Mansfield. He stayed there until about 10:00 p.m. when he went to his brother's home, but no one was home. From there he took a bus to a location near his home and, after stopping for beer and cigarettes, walked on home, arriving a few minutes before midnight. He didn't have a key, so he knocked on the door. As he waited, he heard a noise on his left and saw two black males run from the deceased's home. He yelled at them, but they kept running. Then he went over to the deceased's home. The front door was open and the house was all lit up. He called for Ms. Byers but got no response, so he walked around the downstairs calling her name. He then went part way up the stairs when he discovered the partially clad and bleeding body of the deceased. He again called her name and again received no response. He promptly left the house and went home. Appellant told no one about the incident because he was afraid that the police would infer he had committed the crime.

His further testimony accounted for his presence in other places from Saturday, February 9, until Monday morning, February 11. Among other things, he testified that he visited a woman who lived at 76th and Monroe between 9:00 p.m. and midnight on Saturday, February 9. (The woman is Geneva Abbott, nee Poindexter.) He said he also went back to that same woman's home at about 2:00 p.m. Sunday, February 10, and spent the rest of the day there.

Toward the end of the trial, the appellant called Geneva Abbott (nee Poindexter) to the stand. The State objected to her testifying because the defense had not disclosed that she would be called as an alibi witness. Rule 25.05(A)(5) requires such disclosure if requested by the State.

Geneva Abbott testified on direct and cross-examination, out of hearing of the

jury, in order that the court could determine whether her testimony would be relevant and material. In summary, she stated that she had known the appellant for 14 or 15 years. She knew appellant had been arrested for the murder of the deceased from seeing or hearing it reported on television. She said appellant was at her house on Monroe Street on Saturday, February 9, from after dark for "a couple of hours, few hours, several hours." She was unable to pinpoint the exact time he arrived or left, but did state it was on Saturday night and he stayed several hours. According to her testimony, the next time she saw him was when he was at her house Sunday evening, February 10, from between 6:00 and 8:00 p.m. until about 3:00 a.m. Monday morning, February 11. Her testimony as to the time he was at her house on Sunday covered a period after the body was discovered and to that extent was not totally consistent with appellant's testimony, but she did attest that he was at her house on Sunday.

■ The testimony of Ms. Abbott was clearly material, relevant and important to the defense in the circumstances of this case. While according to appellant's testimony, the deceased was dead as of midnight on Friday, February 8, the fact remains that the State's evidence and the court's instruction permitted a finding that she was killed sometime between about midnight on Friday up to 4:00 p.m. on Sunday. It was the State's evidence that made relevant the whereabouts of the appellant throughout this entire time span, and Ms. Abbott's testimony covered a portion of that time.

Defense counsel Williamson told the court that he first located the witness the night before calling her to the stand (November 5, 1980) and told the prosecutor about her "this morning"—the morning of the last day of trial (November 6, 1980). The State knew appellant claimed to have been with a Geneva Poindexter from the statement appellant gave to the police on February 15, 1980, and testified to by Sergeant Rice in the State's case. From this the prosecutor knew appellant would probably claim to have been with her on Sunday at least.

Defense counsel told the court there had been confusion about the woman and he didn't know until yesterday (November 5, 1980) of her existence. He said there was some breakdown in communication with his client (appellant) and that he thought the time span for Saturday night (February 9) would be covered by other witnesses until yesterday afternoon (November 5, 1980) when he spoke to his client about it, after appellant testified. Defense counsel said he didn't know about her name change from Poindexter to Abbott until then.

The appellant knew about Ms. Abbott but apparently didn't tell his lawyer about her specifically. The trial judge concluded that defense counsel didn't know about her until last night (November 5, 1980), but that his client did know her whereabouts and it was the appellant's fault for not informing his attorney about her.

The prosecutor objected to Ms. Abbott testifying and said he would have cross-examined the witness and the defendant differently had he known what Ms. Abbott would say. The court indicated it would allow Abbott to testify and permit the State to recall the appellant and other witnesses for further cross-examination, if the prosecutor desired that relief. The defense counsel said he would not consent to that because, in his view, there was no need for further cross-examination of the appellant. The court then sustained the State's objection on the basis that the appellant knew about the witness and should have told his lawyer about her.

The issue is whether the trial court abused its discretion to the prejudice of appellant in refusing to permit Ms. Abbott to testify.

In *State v. Smothers,* 605 S.W.2d 128 (Mo. banc 1980), the State called a witness to testify whose name had not been given to

the defense. The defendant objected because of the State's failure to comply with the applicable discovery rule—Rule 25.45 (now Rule 25.16)—but the objection was overruled. On appeal, the court said of the State's failure to disclose:

Failure by the prosecution to disclose the tape of Mrs. Runsick after defendant's written request was a violation of the discovery rules. The duty to disclose is a continuing one, *State v. Curtis,* 544 S.W.2d 580 (Mo. banc 1976); it is not discretionary, *State v. Stapleton,* 539 S.W.2d 655 (Mo.App.1976). The question remains, however, whether the failure to disclose resulted in fundamental unfairness or prejudice to defendant. *State v. Moten,* 542 S.W.2d 317, 320 (Mo.App. 1976). When non-compliance with an applicable discovery rule is brought to the attention of the court, the trial court is given the discretion to 'order . . . disclosure . . ., grant a continuance, exclude such evidence or enter such other orders as it deems just under the circumstances.' Rule 25.45 (present Rule 25.16). The trial court is not required to apply the drastic remedy of a mistrial simply because the statement has not been produced. *State v. Johnson,* 524 S.W.2d 97, 101 (Mo. banc 1975).

*Id.* at 131.

In the very recent case of *State v. Richter* (Mo. banc 1982) [decided August 23, 1982, No. 63353] this Court held that allowing an undisclosed doctor to testify in rebuttal for the State as to whether the defendant had a mental disease or defect did not result in fundamental unfairness to the defendant and therefore there was no abuse of discretion. There the court did allow defense counsel to interview the doctor prior to his testimony.

*Smothers, supra,* held that the trial court has substantial discretion with respect to sanctions under Rule 25.45 (now Rule 25.16) when confronted with a situation where the discovery rules have been violated, but the violation does not necessarily require a mis-trial. In *Richter, supra,* where defense counsel was permitted twenty minutes to interview the doctor, this Court held there was no fundamental unfairness in permitting the witness to testify.

This case presents somewhat the reverse situation. Here the defendant was deprived of the benefit of the alibi testimony of Ms. Abbott. The trial court, in the instant case, recognized there were procedures or orders under Rule 25.16 which would diminish or eliminate any unfairness to the State and still permit Ms. Abbott to testify. Those procedures were to allow the State to recall any alibi witnesses used by the defense, as well as the defendant, for further cross-examination. The trial court did not need the consent of the defendant to allow the recalling of witnesses. Had the trial court done so, the appellant would have had the benefit of the witnesses's testimony and the State would not have been prejudiced.

A mistrial is often spoken of as a drastic remedy that a trial court need not resort to if any other relief would reasonably satisfy the problem. *State v. Johnson,* 504 S.W.2d 23, 29 (Mo.1973).

Applying the reasoning of *Smothers* and *Richter* to the instant case, the problem—possible prejudice to the State—could have been removed or ameliorated by doing what the trial court suggested at the outset, allowing the State to recall defense witnesses and the defendant for further cross-examination.

■ The remedy of disallowing an alibi witness to the defendant is almost as drastic, if not as drastic, as declaring a mistrial. The remedy of disallowing the relevant and material testimony of a defense witness essentially deprives the defendant of his right to call witnesses in his defense. This is not to say it should never be done, but it is certainly a drastic remedy that should be used with the utmost of caution.

■ The Court holds that the refusal to permit Ms. Abbott to testify was funda-

mentally unfair in the circumstances of this case and constitutes prejudicial error requiring the judgment to be reversed and the cause remanded for a new trial.

■ Appellant also contends the court erred in overruling his motion to quash the jury panel because persons under age 21—specifically persons age 18 through 20—were not permitted to serve as jurors. This, appellant argues, deprived him of a right to a jury representative of a fair cross-section of the community.

Section 494.010, RSMo 1978, sets forth the qualifications of jurors and states, *inter alia,* a juror must be over 21 years of age. In *State ex rel. McNary v. Stussie,* 518 S.W.2d 630, 637 (Mo. banc 1974) the court held:

> A state may establish the age for jury service at twenty-one and that right is not affected by the passage of the Twenty-sixth Amendment to the United States Constitution or the fact that the state's minimum age for voting is eighteen.

*See also United States v. Guzman,* 337 F.Supp. 140 (S.D.N.Y.1972); *Deppe v. Board of Jury Supervisors of St. Louis County, Missouri,* 351 F.Supp. 965 (E.D.Mo. 1972); and *United States v. Kirk,* 534 F.2d 1262 (8th Cir. 1976). The point is overruled.

■ Appellant also contends the court erred in failing to submit an instruction on felony murder in the second degree because the evidence was sufficient to show the deceased was killed in the course of the crime of sexual abuse in the first degree under § 566.100, RSMo 1978. Aside from the fact that the alleged error was not preserved for review in appellant's motion for new trial and therefore is not reviewable except as plain error, the appellant was not put on notice by the information charging him that the State would seek to convict him of felony murder in the second degree by proving that he sexually abused the deceased during which the homicide occurred. *The point is overruled.*

Reversed and remanded.

RENDLEN, SEILER, WELLIVER, MORGAN and HIGGINS, JJ., concur.

DONNELLY, C.J., dissents.