STATE of Missouri, Respondent,

v.

Frank ANDERSON, Appellant.

No. WD 56504.

Missouri Court of Appeals,
Western District.

Submitted Nov. 3, 1999.

Decided Feb. 29, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 2000.

Application for Transfer Denied
June 27, 2000.

John M. Schilmoeller, Asst. Public Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before, JAMES M. SMART, Jr., P.J.; JOSEPH M. ELLIS, and EDWIN H. SMITH, JJ.

SMART, Judge.

Frank Anderson was convicted, after a jury trial, of first degree robbery, pursuant to § 569.020, RSMo 1994, and armed criminal action, pursuant to § 571.015, RSMo 1994. He was sentenced to concurrent terms of ten and three years' imprisonment. Anderson appeals the convictions.

### Factual Background

At approximately 9:00 p.m., on the evening of September 4, 1997, Shaun Golden was driving his mother's blue 1990 Chevrolet Corsica near his grandmother's house at 3039 E. 7th Street, in Kansas City, Missouri, preparing to park the car and go in. Shortly before he got to the house, he had to steer around two men in the middle of the street. He noticed that one of the men was tall and the other considerably shorter. Golden parked, and as he was preparing to get out of the car, the two men walked up to the door. The taller man opened the door and Golden saw that he had a "chrome" gun in his hand. He pointed it at Golden's face and told Golden to "drop the keys and run." Golden noted that the man had on a plaid shirt, blue jeans and a Nike hat over a bandanna. Golden identified the taller man as the defendant at trial.

Golden did as he had been told; he dropped the keys and ran across the street to his grandmother's house. As he was waiting for someone to answer the door, he looked back and saw the two men drive away in the Corsica.

At about 9:25 p.m., Kansas City Police Officer Brad Thomas noticed a blue 1990 Chevrolet Corsica being driven erratically near 23rd Street and Paseo. He activated his siren and lights. The Corsica continued south on Paseo to 25th street, ran the stop sign, ran over the curb and drove into a bush in a failed effort to make a left turn. The two occupants jumped out of the car and ran.

Officer Thomas's partner went after the passenger, and Thomas ran after the driver, the taller man. Thomas described the man he was chasing as wearing a blue, plaid-checkered, flannel shirt and khaki pants. Thomas eventually lost sight of the driver, but a short time later he was notified that a suspect had been arrested at 1616 East 22nd Terrace. Police found the suspect on the porch of the house at that address knocking on the door. The man arrested was the appellant, Anderson. Anderson was arrested at approximately 9:32 p.m.

Anderson was breathing hard and his heart was pounding when he was arrested, according the Thomas' testimony. He did not have on a blue-checkered shirt, however; he had on a T-shirt and khaki pants, and no hat or bandanna. He told police that he was "coming over to visit his aunt." When police questioned the woman who lived at the house, she did not know Anderson. Officer Thomas's partner apprehended the other suspect, Larry Willis, who Anderson acknowledged was a friend of his. Willis is five feet two inches in height.

The next day, police showed Golden a photographic lineup of suspects, which included a photograph of Anderson. Golden was unable to positively identify a suspect, he said, because the robber had worn a hat. When the police put a piece of paper across the tops of the heads of all the photographs, Golden positively identified Anderson.

When Anderson was questioned by police about his involvement in the robbery, he first denied that he knew anything about it. Later, Anderson admitted that he and an acquaintance did steal the car from Golden, but said that the gun was a silver squirt gun. He later told an officer that it was not him but his friend who had had the gun. Another officer later asked Anderson about some Sears Craftsman tools that had been taken out of the trunk of the stolen car. Anderson said that they were behind a convenience store and that

if the officer would let him out of jail he would take the officer to the tools and give him $100.00. When the officer refused, Anderson upped the offer to $200.00. The tools were not found at the convenience store.

At trial Anderson testified that he had not been involved in stealing the car. He stated that he had been with his girlfriend, Keisha Whitley, the whole day. The reason he had been on the woman's porch when arrested, he testified, was that he had been looking for a woman named Rita who had given him her address when he talked to her earlier that day. Anderson claimed that the reason he had confessed to the police was that he was afraid and wanted to go home and that the officer told him if he signed the confession he would let him go.

### Procedural History

Prior to the trial, the state, pursuant to Rule 25.05 requested information regarding any alibi that Anderson might intend to rely on at trial. No information about an alibi was forthcoming. In his opening statement at trial, Anderson's defense attorney stated that Anderson was not at the scene of the crime, but was "on the other side of town." The State objected at that point, saying,

> It's my belief that Mr. Schlegel [Anderson's trial counsel] is about ready to establish an alibi for the defendant. He has not notified the State of his intent to rely on an alibi. He has not endorsed any witnesses to support an alibi, and he's not given the State the required notices of alibi as to where and when the defendant was as required by Supreme Court rule.

Appellant's attorney stated that because he was relying upon the testimony of the defendant himself, "in isolation of any other testimony" he did not believe that he was required to "endorse" the defendant as his own witness. Defense counsel stated, "This is just his testimony. This is what he would say." He later added, "All I can say is that the witness that the State has already talked to is the only witness there is." The court sustained the State's objection, but indicated that it would reconsider the issue when the defense was presented.

After the defendant presented two witnesses, but before he took the stand himself, the court sought to re-examine the issue of alibi. The State argued that the requirements of the discovery rule required notification of an alibi even when the defendant is the only one who is going to testify as to his whereabouts at the time of the crime, because the State is entitled to time to investigate. Defendant's attorney argued that Missouri's notice-of-alibi rule was unconstitutional in that it violated a defendant's Fifth Amendment right to remain silent and his Sixth Amendment right to effective assistance of counsel because it violated the attorney-client privilege.

The court ruled that the defendant could testify that he was not at the scene of the crime and that he did not commit the crime. The court went on to define "alibi testimony" as that which involves affirmative evidence of the specific location of the defendant at the specific time of the crime. Stating that it was relying on *State v. Cox*, 542 S.W.2d 40 (Mo.App.1976), the court ruled:

> I am going to preclude the defendant from testifying regarding alibi, which does not mean that he cannot testify regarding his alleged participation in the crime.... What he can not do is say that he was at a specific place at a specific time that would be a time that coincided with the time the offense took place.

Defendant testified that on the day of the crime, he was living with his girlfriend, Keisha Whitley, at 1210B Independence Avenue. When asked whether he was at the scene of the crime (3030 E. 7th Street) at 9:00 p.m. that evening, he answered, "No, I wasn't." He also testified that

when questioned by the police about the crime, he had to "think hard" about what they were talking about because he "knew [he] had been with [his] girlfriend all that day."

Anderson was convicted of first degree robbery and armed criminal action. He was sentenced to concurrent terms of ten and three years' imprisonment. At the sentencing hearing, Anderson's trial counsel repeated his argument that it was error for the court to preclude Anderson from testifying regarding an alibi. The court rejected his argument. The court also denied Anderson's motion for a new trial in which he asserted that prohibiting his alibi testimony denied him his Fifth, Sixth, and Fourteenth Amendment rights.

Anderson appeals to this court on the ground that he was denied his constitutional rights when the trial court refused to allow him to testify to an alibi since he had not supplied the State with the requisite information pursuant to Rule 25.05(A)(5).

### Discussion

Anderson contends that the sanction in this case was an unconstitutional deprivation of his right to testify in his own defense, to present witnesses, to be free from self-incrimination, and to due process of law.

■ The requirement that the defendant provide the state with notice of intent to rely upon an alibi defense is not an unreasonable or unconstitutional discovery request in the context of mutual disclosure requirements. *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (Florida's notice-of-alibi rule upheld against an argument that it violated the right to be free from self-incrimination); *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) (Oregon's rule struck down because it did not impose "reciprocal discovery" on both the defendant and the state). Here, there is no contention that the discovery rules disproportionately favor the state. Accordingly,

the defendant's fundamental due process rights are infringed in this case only if the court's sanction resulted in fundamental unfairness. *State v. Mansfield*, 637 S.W.2d 699, 703–04 (Mo. banc 1982).

■ Looking at the sanction in its entire context, we note, first of all, the state failed to comply with the provision of Rule 25.05(A)(5) requiring that the state in its discovery requests, specify the place, date, and time of the crime charged. While we recognize that generally the charge itself supplies this information, and while there is no reason to believe that the lack of such specification hindered the accused in this case, it still must be noted that the rule, by its clear terms, does not trigger any duty until the state has submitted a request specifying the place, date and time of the crime charged. The request need not state the exact moment of the crime. *Cox*, 542 S.W.2d at 50. However the drafters of the rule thought such specification was of sufficient importance to warrant that it be a specific requirement. Accordingly, the state will be in a better position to obtain enforcement if it has included the necessary specification in the request. In this case, however, Anderson did not call to the court's attention the state's failure to include the specification in the discovery request, and we have no reason to believe that the court was aware of the state's failure. Anderson thus cannot now be permitted to criticize the court's action on that basis.

Anderson argues that the notice requirement does not or should not apply when the defense plans to present no alibi testimony other than that of the accused. There is some support for the view that an accused person who intends to offer only his own testimony in support of the defense of alibi need not submit a notice of alibi. *See* Ferdinand S. Tinio, Annotation, *Validity and Construction of the Statute Requiring Defendant in a Criminal Case to Disclose Matter as to Alibi Defense*, 45 A.L.R.3d 958 (1972). The issue arose in *Cox*, 542 S.W.2d at 49–50, but was not

decided there, although the court noted that "the weight of authority" supports an interpretation of alibi that includes the accused's own testimony about his location at the time of the crime. *Id.* at 52 n. 19.

## Alibi

The term "alibi" in common parlance frequently seems to anticipate the presentation of testimony by witnesses other than the accused. However, we believe that, for discovery purposes, the trial court was technically correct in concluding that Rule 25.05(A)(5) requires disclosure of intent to rely on evidence that the defendant was at another specific location at the time of the crime, even when such evidence is to come only from the accused. When an alibi is to be offered, including one to be offered only by the accused's own testimony, the state still has a legitimate interest in having an opportunity to investigate the alibi in advance of trial. An efficient trial is also facilitated by the state knowing whether the defense theory is going to be alibi because a defense of alibi is necessarily inconsistent with certain other possible theories, such as self-defense. Thus, we do not conclude that the trial court erred in its understanding of what constitutes the defense of alibi to the extent that the court reasonably believed defendant was going to offer evidence that he was at another specific location. Testimony by an accused that he or she was not present at the scene of the crime, without the specification of a precise location, is not an alibi, of course. It is a mere denial.

> An alibi, as an item of evidence, stands separate from defendant's bare denial that he committed the alleged offense. An alibi is additional substantive evidence, above and beyond the accused's bare denial of guilt, relying for its weight on the credibility of other persons, or on circumstantial evidence, designed to establish that defendant could not have committed the offense in question.

*State v. Williamson,* 877 S.W.2d 258, 261 (Mo.App.1994). The difference between an alibi and a mere denial may be a fine line in certain cases. A statement by the accused that he was not at the scene of the crime is functionally more of a denial than an alibi, even if the accused, when asked to account for his whereabouts, states that he assumes he was at home at the time in question. In contrast, an accused who offers a ticket stub, and claims he was at a concert at the time of the crime, is offering an alibi. *Id.*

## Fundamental Unfairness

The trial court is allowed discretion to sanction a discovery violation, and the court's decision will be reversed on appeal only if it results in fundamental unfairness to the defendant in that it substantially prejudiced the defendant or affected the outcome of the trial. *Mansfield,* 637 S.W.2d at 703. However, it must be remembered that a refusal to allow testimony in a criminal case is a "drastic remedy." *Id.* The court, in considering a request for sanction for failure to disclose an alibi, should consider all of the pertinent circumstances, including any prejudice to the state from the failure to make disclosure. In this case, when the state moved for sanction, it would have been appropriate for the court to inquire more specifically of the defense exactly what testimony the defendant intended to present as to his whereabouts, including the specific location, the identity of other persons present, and the nature of any corroboration to be offered. The court could then have inquired of the state what it would have done differently if it had received seasonable notice. If the court had determined that any prejudice to the state was negligible, the court would, in our view, have done well to deny the request for sanction altogether. Here, however, we fail to discern that the court's order resulted in any fundamental unfairness to the accused. The defendant in this case, in spite of the court's ruling, managed to present his rather modest "alibi" testimo-

ny anyway.[1] The record indicates that any statements the defendant wished to make about his whereabouts at the time of the robbery were actually made. Accordingly, we hold that the trial court's ruling did not violate the defendant's right to testify in his own defense, his right to present witnesses, or to be free from self-incrimination. The judgment is affirmed.

ELLIS and EDWIN H. SMITH, JJ., concur.

1. It is difficult to see how, under even the best of circumstances, the defendant could have derived much benefit from his testimony that he spent the day with his girlfriend. The evidence showed that the crime occurred about 9:00 p.m. The robbers drove off in the victim's vehicle. Approximately one-half hour after the victim's car was taken, after a police chase, defendant was arrested on the porch of a house a couple of miles from the scene of the robbery and also a significant distance from the address at which defendant resided. We fail to see how defendant's claimed "alibi" would have logically precluded the possibility that defendant committed the robbery.