**STATE of Missouri, Respondent,**

v.

**Charles H. ALLEN, IV, Appellant.**

**No. WD 59970.**

Missouri Court of Appeals, Western District.

June 4, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 2002.

Application for Transfer Denied Aug. 27, 2002.

Sara Weber Patel, Appellate Defender Office, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris and Andrea Mazza Follett, Office of Attorney General, Jefferson City, for Respondent.

PAUL M. SPINDEN, Chief Judge.

Charles Allen appeals the circuit court's judgment convicting him of driving while intoxicated and driving while his license was revoked. He argues that the circuit court abused its discretion when it overruled his objection and request to instruct the jury to disregard one of the state's

statements during closing argument. He also complains that the circuit court abused its discretion by excluding one of his witnesses on the ground that he had not disclosed the witness to the state. We affirm the circuit court's judgment.

In complaining about the prosecutor's closing argument, Allen asserts that the prosecutor aroused the jurors' personal hostility toward him by implanting fear that acquitting him would endanger their children's and grandchildren's safety. The prosecutor said in her closing argument:

> The state would ask during your deliberations that you think and that you return a guilty verdict of driving while intoxicated against this defendant, Mr. Allen, and that you return a guilty verdict on Count 2 for driving while revoked against this defendant, Mr. Allen, sending the message that you are to protect your community, your neighborhood, your children, and your grandchildren from drunk drivers. Thank you.

■ The prosecutor's statement was not improper personalization. "The use of the word 'you' [during closing argument] does not automatically amount to an improper personalization." *State v. Lyons*, 951 S.W.2d 584, 595 (Mo. banc 1997). The phrase "your children, and your grandchildren" is a general, all-encompassing form to include society as a whole, rather than as a reference to the jurors' specific children and grandchildren. *State v. Kriebs*, 978 S.W.2d 460, 467 (Mo.App.1998); *compare State v. Raspberry*, 452 S.W.2d 169, 172 (Mo.1970) (prosecutor stated that jury should convict defendant "for the sake of your children, and for your wives, and for your families"); *State v. Groves*, 295 S.W.2d 169, 173 (Mo.1956) (prosecutor stated that jury should convict because "if any of you have any daughters . . . your daughter could be the next one, or your grandchild"). The prosecutor was advo-

cating the personal safety of the community's citizens, and this is permissible. *State v. Norton*, 949 S.W.2d 672, 677 (Mo.App. 1997). Moreover, the prosecutor's asking the jury to "send a message" is permissible. *State v. Cobb*, 875 S.W.2d 533, 537 (Mo. banc 1994).

■ Allen's second point on appeal is whether the circuit court's exclusion of one of Allen's witnesses, Saundra Gray, was an abuse of discretion. Allen failed to timely disclose his intention to call Gray as a rebuttal witness to rebut Officer David Nathan's demeanor.

■ The circuit court's ruling on the admission or exclusion of evidence will be reversed only on a showing of abuse of discretion. *State v. Wahby*, 775 S.W.2d 147, 153 (Mo. banc 1989). When considering whether the circuit court has abused its discretion, we must consider what prejudice the state suffered as a result of the untimely disclosure and whether the remedy resulted in fundamental unfairness to the defendant. *State v. Mansfield*, 637 S.W.2d 699, 703 (Mo. banc 1982). "Fundamental unfairness" exists if an earlier disclosure of the requested information would have affected the result of the trial. *State v. Royal*, 610 S.W.2d 946, 951 (Mo. banc 1981). A new trial is necessary if the defendant establishes the information withheld was material and was not previously known or expected by the defendant in trial preparation. *State v. Scott*, 943 S.W.2d 730, 736 (Mo.App.1997). We must review the circumstances of this case to determine whether Allen suffered prejudice sufficient to establish fundamental unfairness, including the nature of the charge, the evidence presented, and the role the excluded evidence would have played in Allen's defense. *State v. Simonton*, 49 S.W.3d 766, 781 (Mo.App.2001).

The evidence established that Officer David Nathan stopped a car driven by Allen to investigate a violation of a speed limit. When the officer asked Allen why he did not park the car immediately in response to Nathan's emergency lights, Allen replied that he was "[p]artying." Nathan noticed that Allen's eyes were watery and dilated and that Allen smelled of alcohol. Allen's speech was slurred and he was slow to respond to Nathan's questions. Allen was barely able to stand up and needed Nathan's help to walk to the rear of the vehicle. After Allen was taken to the police station, he failed horizontal gaze nystagmus and walk-and-turn tests. A breath test revealed that Allen's blood alcohol content was twice the legal limit. The officer who performed the breath test, Officer Terry Donovan, noticed that Allen's eyes were glassy and dilated and that Allen smelled of alcohol.

Allen testified that he was not driving the car. He said that he was in the passenger seat, that he was drunk, and that he "got smart" with Nathan and that his arrest resulted from Nathan's becoming angry at him.

Brian Strother testified that he was the car's driver. He said that Allen was belligerent to Nathan and that Nathan responded with "an attitude." Strother said that he identified himself to officers as "Charles Allen" and told them that he had been drinking all day.

The state requested Allen's list of potential witnesses some time before September 28, 2000. Allen sought to introduce the testimony of Gray, a bystander who witnessed the arrest. He offered her testimony as rebuttal on the trial's last day. Allen offered this explanation for his delay in identifying Gray as a witness:

> [W]e would note that a week ago Monday, on the 22nd of this month, a deposition was held by our office of Officers Lombardo and Tomanio. From those depositions we learned that there were people from the neighborhood who were eyewitnesses to the events at issue in this case.
>
> Upon receiving that information in deposition, Mr. Stephens and our investigator, Winifred Varner, went to the neighborhood to try to find these people who could be eyewitnesses, and their investigation led to contacts with Miss Gray.
>
> Miss Varner conducted a telephone interview of Miss Gray and then on Friday, a week ago today, reported the results of that telephone interview to me.
>
> My impression upon hearing the report was that Miss Gray would not contribute to the theory of defense, which we were contemplating at that time. Therefore, it was my considered decision that we would not call her as a part of our case-in-chief.
>
> Our trial has begun this week. We picked our jury two days ago, on Wednesday. Yesterday evidence began.
>
> In the course of the giving of that evidence, it became clear to me that one topic that Miss Gray could give testimony about which had not seemed to be a crucial topic when I originally heard the report about her potential evidence was something which was emerging in the course of trial as a pivotal issue. That subject is the degree to which the arresting officers exhibited any emotional response to the behavior of the men that they were arresting.
>
> Officer Nathan denied being angry. He denied any kind of belligerent action on his part. It is that testimony which I believe Miss Gray's own testimony would contradict.

She was there. She thought he was angry when she first saw him. She saw him from the beginning of this and then she saw the angry conversation between the men who were seated on the curb and the arresting officers. If for no other purpose, we ask leave of the Court to call Miss Gray as a rebuttal issue on that point alone.

The circuit court responded:

Well, this matter has been pending since June, the discovery request was made seven months ago, and to suggest that we have to continue this case into next week because no attempt was made to investigate, apparently, whether or not there were other witnesses who witnessed this is unconscionable to the Court and I'm not going to permit that.

I do not believe that the testimony that would be provided by Miss Gray is of such overwhelming nature that it is imperative to the defense['s] case and, quite frankly, I didn't hear anything from Miss Gray that I believed to be substantially contradictory of what Officer Nathan testified to.

Aside from that, I am greatly disturbed by the fact that the defendant feels free, when he finds out about testimony that he believes to be contradictory of what occurred during this trial, especially in light of the fact that Officer Nathan was deposed in this case and the interview with the witness did not occur until after that deposition, under those circumstances, I do not believe there is any fundamental unfairness in excluding this testimony.

During Allen's offer of proof, Gray testified that she saw the officers' confrontation with Allen and Strother as she stood on her neighbor's porch. She said that the officer driving the "paddy wagon" appeared to her to be "kind of agitated because either he had followed them, chased them, or something to that effect[.]" She said that three men got out of the car, but officers let one of them go. Officers handcuffed two of the men and that those two "were doing a lot of cursing and everything, and the police officers was telling them to shut up and that they caught doing whatever they were doing." She opined that "the situation ... looked like it was kind of getting out of control" and that her neighbor wanted to videotape the scene because "the police officers wasn't doing the guys in the car right."

The circuit court did not abuse its discretion in excluding Gray's testimony. We do not believe that the circuit court erred in concluding that her testimony was not proper rebuttal testimony—that Allen should have offered it in his case in chief. Not discerning an abuse of discretion by the circuit court in excluding Gray's testimony, we deny the point.

We, therefore, affirm the circuit court's judgment.

JAMES M. SMART, JR., Judge, concurs.

RONALD R. HOLLIGER, Judge, concurs in separate opinion.

RONALD R. HOLLIGER, Judge, concurring.

I concur in the result of the majority opinion affirming the conviction of Charles Allen. I write separately because I believe that there was no prejudice to Allen by the exclusion of Ms. Gray's testimony and, therefore, no abuse of discretion by the trial judge. Nevertheless, I believe that the trial court erred in not asking the State to identify what prejudice it claimed resulted from the late endorsement of the witness.

A violation of Rule 25.05 requiring disclosure of witness identity by both the

State and a defendant exposes either party to potential sanctions under Rule 25.16:

> If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, **the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances.** Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

(Emphasis added).

The issue of whether any sanctions at all should be imposed is addressed to the sound discretion of the trial court. Likewise, the issue of what sanction is appropriate is a matter for the trial court's discretion. As Rule 25.16 clearly indicates exclusion of a non-disclosed witness's testimony is only one of the available sanctions.

The majority of the reported cases involving untimely witness disclosure involve tardy disclosures by the State. In many of those, the witness is allowed to testify or the evidence is introduced despite the State's violation of Rule 25.05. In the vast majority of those cases the decision has been upheld as within the trial court's discretion. Frequently, the trial court in those cases has permitted the defendant to interview the witness and in some cases depose the witness. More rarely, in some cases a short continuance has been granted to permit the defendant to prepare for the unanticipated testimony. Central to the exercise of the trial court's discretion is a consideration of all of the circumstances. But particularly essential is an analysis of the potential prejudice to the party who has not received timely disclo-

sure. The same principles of analysis and discretion apply where the defendant has violated the disclosure rule.

"[R]efusal to allow testimony in a criminal case is a 'drastic remedy.'" *State v. Anderson,* 18 S.W.3d 11, 16 (Mo.App.2000) (citing *State v. Mansfield,* 637 S.W.2d 699, 703 (Mo. banc 1982)). In *Anderson,* the defendant had failed to provide notice of intent to rely on an alibi defense as also required by Rule 25.05. The court refused to permit the defendant to testify about his specific whereabouts and time and place, allowing only defendant's testimony that he was not at the scene and did not commit the crime. On appeal, we affirmed but discussed the better procedure that should have been followed by the trial court. Judge Smart wrote:

> The court, in considering a request for sanction for failure to disclose an alibi, should consider all of the pertinent circumstances, including any prejudice to the state from failure to make disclosure. In this case, when the state moved for sanction, it would have been more appropriate for the court to inquire more specifically of the defense exactly what testimony the defendant intended to present as to his whereabouts, including the specific location, the identity of other persons present and the nature of any corroboration to be offered. The court could then have inquired of the state what it would have differently if it had received seasonable notice. **If the court had determined that any prejudice to the state was negligible, the court would, in our view, have done well to deny the request for sanction altogether.**

*Id.* (emphasis added).

Here, it seems obvious that the assistant prosecuting attorney took the erroneous view that violation of the disclosure rule automatically entitled the State to exclu-

sion of the witness. The defense suggested that the State could privately interview the witness. Neither the State nor the court took up that offer. After the judge indicated he was likely to impose the exclusion sanction, the defense made an offer of proof through the witness. Even then, the prosecuting attorney refused an offer to cross-examine the witness. The defense suggestion that the prosecutor be given some time to consider her questions or difficulties in preparing for the witness if allowed to testify was not responded to by the State or court.

In short, neither the State nor the trial court gave any apparent consideration to the issue of prejudice to the State. Although the trial court, after careful consideration, ultimately concluded that there was no fundamental unfairness to the defendant from the exclusion of the witness (a conclusion with which I agree as discussed later), such consideration was not the proper focus. The initial consideration should have been whether the State would be prejudiced by permitting the witness to testify and not whether the defendant would be prejudiced by imposition of the sanction. The distinction is important because where the prejudice to the State is non-existent or negligible the imposition of the most serious sanction of witness exclusion is not appropriate. *Id.*

Whether and how to sanction for non-disclosure is discretionary. Any statement that an issue is for the exercise of discretion implies that there is no single right answer. Although it may be presumed in some situations that a trial court has acted with discretion, in others, including this one I suggest, the record should directly reflect the consideration and exercise of discretion, for example, where the trial court indicates it has considered various alternatives or the record should contain sufficient information to demonstrate a ba-

sis for the trial court's choice of discretionary answers to the question. Here, the record contains neither. And, most importantly, the record contains neither claim by the State nor inquiry by the court as to any prejudice to the State. Given those circumstances, I do not believe that the record contains a proper basis for the exercise of the trial court's discretion to exclude the defendant's witness.

Nevertheless, I agree that the conviction should be affirmed. Ultimately the test on appeal where either sanction is imposed or denied is whether the ruling resulted in fundamental unfairness to the suffering party. *Mansfield*, 637 S.W.2d at 703. The trial court indicated it was dubious whether the proposed testimony was really impeaching of Officer Nathan. The proposed witness could not identify or exclude Allen as the driver of the vehicle. She indicated that the scene was "loud," which Nathan had not denied. The witness said that Nathan appeared "agitated" after a high-speed chase through a residential neighborhood. He said that he was probably "excited." She testified that the three occupants of the car were "cursing." Nathan described various levels of cooperativeness and mouthing by the three. He indicated that because of the difficulty in getting the occupants to do as directed that he and the other officers might have been loud and appeared to be yelling. Although the witness indicated that she was concerned about the matter escalating to violence, nothing physical occurred and she could not remember anything in particular said by anyone, including Officer Nathan. That the witness perceived the atmosphere as tense does not necessarily contradict the view of a police officer frequently confronted with similar situations. And, very importantly, she never testified that Nathan was "angry," that characterization came only in defense counsel's argument. That is not to say that the testi-

mony of Ms. Gray would have not been admissible impeachment of Nathan if she had been properly endorsed. It does lead to the conclusion, however, that no fundamental unfairness resulted to the defendant from the exclusion of her testimony.

Two other factors lead to the conclusion that the court's ruling did not undermine the validity of Allen's conviction. Although it would be improper for this court to supply the State's prejudice claim from late disclosure to affirm the conviction, it is apparent that the State could have argued prejudice by the denial of any opportunity to investigate or rebut Gray's testimony. In the offer of proof, she identified other potential witnesses by name. Because of the late disclosure, only after all other defense witnesses had testified, the State did not have the opportunity to seek other witnesses that she identified. Although the defendant argues that the State could have gone out on its own and discovered Ms. Gray and others after the other officers' depositions, this was not like those cases where the State knows or should know of the identity of non-disclosed witnesses and takes no action. See, for example, *State v. Kimmell*, 720 S.W.2d 790 (Mo. App.1986).

Finally, the record leads to some suspicion that counsel for defendant considered the Rule 25.05 disclosure requirement and made a conscious decision (and possibly a strategic one) not to disclose in reliance upon claimed local custom to permit defendants to introduce impeachment evidence in surrebuttal. Defendant makes no argument now that the witness should have been allowed to testify or surrebuttal and could not. See *State v. Garrett*, 682 S.W.2d 153, 156 (Mo.App.1984).