**STATE of Missouri, Respondent,**

v.

**Ronnie L. MARTIN, Jr., Appellant.**

**No. WD 61194.**

Missouri Court of Appeals, Western District.

Feb. 25, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 2003.

Application for Transfer Denied May 27, 2003.

Kent Denzel, Assistant State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and EDWIN H. SMITH, JJ.

ROBERT G. ULRICH, J.

Ronnie Martin appeals his conviction following a jury trial for driving while revoked, section 302.321, RSMo 2000, and sentence of four years imprisonment. He claims on appeal that the trial court (1) abused its discretion in refusing to permit him to call a defense witness to testify; (2) plainly erred in entering judgment and sentencing him for driving while revoked as a class D felony; and (3) abused its discretion in overruling his objection to the prosecutor's closing argument. The judgment of conviction is affirmed.

On the evening of April 7, 2001, Missouri State Highway Patrol Trooper Christopher Shannon was patrolling Missouri Highway 371 near Route A in Buchanan County when he saw a gray Plymouth speeding. As Trooper Shannon drove his car behind the Plymouth, it turned right onto a driveway to a farmhouse. Trooper Shannon activated the emergency lights and siren of his patrol car, and the Plymouth accelerated, drove off the driveway into the grass and around a detached garage, and returned to the highway. While pursuing the car, Trooper Shannon saw that the driver was a black male weighing approximately 200 pounds with long hair sticking out from under a baseball cap and that two other passengers were in the car. He was also able to read the car's license plate and determined that the car was registered to Caroline Wragg. Back on the highway, Trooper Shannon pursued the Plymouth until it recklessly passed another vehicle at high speed on the crest of a hill. The trooper then terminated the high-speed

pursuit to avoid danger to other drivers and began following the car at normal speed. Trooper Shannon saw the Plymouth pass another car on the crest of a hill and then exit onto Highway 752 in southern St. Joseph. He continued to follow the car at normal speed and found it five minutes later parked with its lights off near 7th Street and Mason in St. Joseph.

Two females, Caroline Wragg and Stormy Martin, the appellant's wife, were standing outside of the car. Trooper Shannon asked the women who was driving the car, but they told him that they didn't know. Ms. Wragg was arrested on an outstanding warrant and transported to the police station. Mrs. Martin was not arrested. At the police station, Ms. Wragg gave a written statement to Trooper Shannon identifying the appellant, Ronnie Martin, as the driver of the Plymouth.

Mr. Martin was charged with one count of driving while revoked. He was charged with a class D felony because the State alleged he had two previous convictions for driving while revoked and a prior alcohol related enforcement contact. Mr. Martin was also charged as a prior and persistent offender.

At trial, Ms. Wragg testified that Mr. Martin was driving the Plymouth and that after he eluded the police, he stopped the car and ran. She also testified that although she was drunk during the incident, she did remember who was driving and that she did not want to testify because she did not want to get her friends into trouble.

Mr. Martin did not present any evidence in his defense. The jury returned a verdict of guilty, and the trial court entered judgment accordingly and sentenced Mr. Martin to four years imprisonment. This appeal followed.

## I.

In his first point on appeal, Mr. Martin argues that the trial court abused its discretion in refusing to permit him to call his wife, Stormy Martin, to testify. He contends that excluding Mrs. Martin's testimony was a drastic remedy for his failure to endorse her and that the State failed to show any prejudice to it that would have resulted from Mrs. Martin testifying because Mrs. Martin's involvement in the case was always known by the State.

After the State rested its case in chief, Mr. Martin attempted to call his wife, Stormy Martin, to testify. The State objected arguing that it had not received any discovery concerning the statements Mrs. Martin would make and that Mrs. Martin was never endorsed as a witness. After reviewing his files, Mr. Martin's attorney admitted that he had neglected to endorse Mrs. Martin as a witness. Mr. Martin then presented Mrs. Martin's proposed testimony in an offer of proof. Mrs. Martin testified that a man named Brian, whom she and Ms. Wragg met earlier that day in Kansas City, was driving the car when the trooper began to pursue them. After eluding the trooper for a short time, Brian stopped the car and ran. Mrs. Martin testified that she did not know Brian before that day, had not seen him since the incident, and did not know his last name or how to contact him. Finally, Mrs. Martin denied telling Trooper Shannon that she did not know who the driver was and insisted that she told him a man named Brian was driving.

As an attempt to cure any prejudice to the State as a result of the failure to endorse Mrs. Martin, counsel for Mr. Martin requested a recess until the next morning to allow the prosecutor to interview Mrs. Martin. The prosecutor argued that such a recess would not cure the prejudice to the State because (1) it had no prior

knowledge that the defense would present evidence that someone else was driving the car and (2) it had already released its witnesses, Trooper Shannon and Ms. Wragg. The trial court ultimately refused to allow Mrs. Martin's testimony as a sanction for the failure to endorse her.

■ Discovery rules are "intended to allow both sides to know the witnesses and evidence to be introduced at trial" and to eliminate surprise. *State v. Simonton,* 49 S.W.3d 766, 781 (Mo.App. W.D.2001)(quoting *State v. Whitfield,* 837 S.W.2d 503, 508 (Mo. banc 1992)). Rule 25.05(A)(2) requires a defendant, upon written request by the State, to disclose the names of any witnesses he intends to call to testify. Rule 25.05(A)(2); *State v. Watson,* 755 S.W.2d 644, 645 (Mo.App. E.D.1988). Rule 25.16 provides for sanctions for failure to comply with the discovery rules. Rule 25.16; *Watson,* 755 S.W.2d at 645. In fashioning sanctions for a discovery violation, the focus is generally on the removal or amelioration of any prejudice that the State suffers due to the violation. *Simonton,* 49 S.W.3d at 781 (quoting *State v. Massey,* 867 S.W.2d 266, 268 (Mo.App. E.D.1993)). Among the sanctions authorized by Rule 25.16 is the exclusion of the testimony of a witness whose identity has not been properly disclosed. Rule 25.16; *Simonton,* 49 S.W.3d at 780; *State v. Lopez,* 836 S.W.2d 28, 32 (Mo.App. E.D.1992). The remedy of disallowing the relevant and material testimony of a defense witness, however, essentially deprives the defendant of his right to call witnesses in his defense. *Simonton,* 49 S.W.3d at 781 (quoting *State v. Mansfield,* 637 S.W.2d 699, 703 (Mo. banc 1982)); *Lopez,* 836 S.W.2d at 32. Thus, a trial court's refusal to allow testimony in a criminal case is a drastic remedy that should be used with the utmost caution. *Simonton,* 49 S.W.3d at 781 (quoting *Mansfield,* 637 S.W.2d at

703); *Lopez,* 836 S.W.2d at 32. Nevertheless, the decision to impose sanctions under Rule 25.16, including the exclusion of a witness, is within the discretion of the trial court. *Simonton,* 49 S.W.3d at 780.

■ In determining whether the trial court abused its discretion, an appellate court must first consider what prejudice the State would have suffered as a result of the discovery violation and second, whether the remedy resulted in fundamental unfairness to the defendant. *State v. Allen,* 81 S.W.3d 227, 229 (Mo.App. W.D. 2002); *Simonton,* 49 S.W.3d at 781; *State v. Anderson,* 18 S.W.3d 11, 16 (Mo.App. W.D.2000). The initial consideration, whether the State would have suffered prejudice by permitting the witness to testify, is important because where the prejudice to the State is nonexistent or negligible, the imposition of the drastic sanction of witness exclusion is not necessarily appropriate. *Allen,* 81 S.W.3d at 233 (Holliger, J., concurring); *Anderson,* 18 S.W.3d at 16. In this case, even if the prosecutor was given overnight to interview Mrs. Martin as suggested by the defense, the State would still have suffered prejudice if Mrs. Martin had been allowed to testify. Mrs. Martin's testimony would have been that a man named Brian, whom she and Ms. Wragg met earlier that afternoon, was driving the car when Trooper Shannon attempted to stop it. This proposed testimony unfairly surprised the State. At no time prior to Mr. Martin's attempt to call Mrs. Martin and his offer of proof after the State rested its case was the State aware that the defense would offer evidence that a man other than Mr. Martin was driving the car. The only information known by the State concerning the identity of the driver was that Ms. Wragg identified Mr. Martin as the driver in her written statement at the police station. While the State knew that Mrs. Martin was in

the car, it could not have known that she would testify that a man named Brian was actually driving. The only information known by the State concerning Mrs. Martin's potential testimony was that she did not know who was driving. Trooper Shannon testified that Mrs. Martin had told him this when he asked her and Ms. Wragg who had been driving. To have allowed Mr. Martin to present, through the testimony of Mrs. Martin, this new defense that a man named Brian was driving the car would have prejudiced the State in that it would not have had the opportunity to investigate the claim that someone other than Mr. Martin was driving. Specifically, the State would have been denied the opportunity to identify, locate, and obtain a statement from Brian.

Additionally, the potential unfairness to the State was compounded by the fact that Mr. Martin's late endorsement of Mrs. Martin came after the State had rested its case in chief and its witnesses had been excused. Recalling Ms. Wragg and Trooper Shannon would have been essential to rebut Mrs. Martin's testimony that a man named Brian was driving and that Mrs. Martin had reported this to Trooper Shannon. While the trial court recognized that recalling Trooper Shannon would have been fairly easy, the same could not be said about Ms. Wragg. Ms. Wragg was a reluctant witness. The trial court noted that at a previous hearing Ms. Wragg obviously did not want to testify. Additionally, she testified at trial that she was in court under a subpoena and that she did not want to testify because she didn't want to get her friends into trouble. For all of these reasons, the State would have suffered prejudice if Mrs. Martin had been allowed to testify.

 The second inquiry, and ultimately the standard by which the exclusion of a witness must be tested, is wheth-

er the sanction resulted in fundamental unfairness to the defendant. *Simonton,* 49 S.W.3d at 781. Fundamental unfairness results if the exclusion of a witness's testimony substantively alters the outcome of the trial. *Id.* at 783. To determine whether the exclusion resulted in prejudice to the defendant, the facts and circumstances of the particular case must be examined including the nature of the charge, the evidence presented, and the role the excluded evidence would have played in the defense's theory. *Allen,* 81 S.W.3d at 229; *Simonton,* 49 S.W.3d at 781. Exclusion of a witness may be proper when no reasonable justification is given for the failure to disclose the witness. *State v. Miller,* 935 S.W.2d 618, 623 (Mo. App. W.D.1996); *Watson,* 755 S.W.2d at 646; *State v. Harris,* 664 S.W.2d 677, 680–81 (Mo.App. E.D.1984). If an explanation tends to show good cause for the nondisclosure, exclusion of a significant defense witness would likely be an abuse of discretion. *Miller,* 935 S.W.2d at 624.

In this case, no explanation, beyond counsel's neglect, was provided for the failure to disclose Mrs. Martin as a witness. It is very doubtful that Mrs. Martin was not discovered by the defense until trial, especially since she is Mr. Martin's wife. *See Watson,* 755 S.W.2d at 646 (exclusion of alibi witnesses as sanction for failure to disclose was not fundamentally unfair especially where witnesses were defendant's girlfriend and aunt); *Harris,* 664 S.W.2d at 680–81 (court found it "inconceivable" that three alibi witnesses were not discovered until second day of trial where two of the witnesses were defendant's relatives and the third was his girlfriend). Therefore, under the circumstances of this case, no fundamental unfairness to Mr. Martin resulted from the exclusion of Mrs. Martin's testimony. The trial court, therefore, did not abuse its discretion in denying Mr.

Martin's request to endorse Mrs. Martin after the close of the State's case. Point one is denied.

## II.

In his second point on appeal, Mr. Martin claims that the trial court plainly erred in entering the judgment of conviction and sentencing him for driving while revoked as a class D felony. He contends that the State failed to prove the elements necessary for enhancement from a class A misdemeanor to a class D felony. Specifically, he claims that the State failed to prove that he had a prior alcohol related enforcement contact.

 Mr. Martin concedes that he did not object to the trial court's sentencing him for a class D felony. His contention is, therefore, subject only to plain error review under Rule 30.20. *State v. Kidd*, 75 S.W.3d 804, 811 (Mo.App. W.D. 2002). Rule 30.20 provides in pertinent part, "Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Under this rule, plain error review involves a two-step process. *Kidd*, 75 S.W.3d at 811. First, the appellate court must determine whether the claim of error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.'" *Id.* (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995)). In other words, the appellate court must determine "whether, on the face of the claim, plain error has, in fact, occurred." *Id.* (quoting *State v. Dudley*,

51 S.W.3d 44, 53 (Mo.App. W.D.2001)). Plain error is error that is evident, obvious and clear. *State v. DeWeese*, 79 S.W.3d 456, 457 (Mo.App. W.D.2002). Second, if the error is obvious, then, at the court's discretion, it may consider whether a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Kidd*, 75 S.W.3d at 811–12.

The offense of driving while revoked is a class A misdemeanor. § 302.321.2, RSMo 2000. Section 302.321.2, RSMo 2000, enhances the offense to a class D felony where the defendant has committed multiple driving while revoked offenses. It provides in pertinent part:

> Any person with no prior alcohol-related enforcement contacts as defined in section 302.525, convicted a fourth or subsequent time of driving while revoked and any person with a prior alcohol-related enforcement contact as defined in section 302.525, convicted a third or subsequent time of driving while revoked is guilty of a class D felony.

*Id.; State v. Rowe*, 63 S.W.3d 647, 649 n. 2 (Mo. banc 2002).

The State charged Mr. Martin with a class D felony alleging that he had two prior convictions for driving while revoked and that he had a prior alcohol related enforcement contact in that he was convicted of "a violation that involved driving a vehicle while having an unlawful alcohol concentration." To prove these allegations, the State submitted exhibits containing certified copies of Mr. Martin's two prior driving while revoked convictions and a certified copy of his conviction for driving while intoxicated, specifically "DWI–Alcohol."[1] Mr. Martin claims that a con-

---

1. Mr. Martin argues in his reply brief that Exhibit 7, which shows multiple court convictions in his Missouri driving record, was never offered or admitted at trial. The trial transcript demonstrates, however, that the two-page exhibit was actually part of Mr. Martin's entire driving record that was offered and admitted at trial as Exhibit 6. The court, how-

viction for DWI does not constitute a prior alcohol related enforcement contact; therefore, the State failed to prove enhancement of the offense to a class D felony.

An alcohol related enforcement contact is defined in section 302.525, RSMo 2000:

> 3. For purposes of this section, "alcohol related enforcement contacts" shall include any suspension or revocation under sections 302.500 to 302.540, any suspension or revocation entered in this or any other state for a refusal to submit to chemical testing under an implied consent law, and any conviction in this or any other state for a violation which involves driving a vehicle while having an unlawful alcohol concentration.

§ 302.525.3, RSMo 2000. The term "alcohol concentration" as used in sections 302.500 to 302.540 means, "the amount of alcohol in a person's blood at the time of the act alleged as shown by chemical analysis of the person's blood, breath, saliva or urine." § 302.500(1), RSMo 2000.

▇ Although essential to prove the offense of driving with excessive blood alcohol content, section 577.012, RSMo 2000, proof of a numerical measure of blood alcohol content is not essential in a DWI case. *State v. Rose,* 86 S.W.3d 90, 105 (Mo.App. W.D.2002); *State v. Robertson,* 764 S.W.2d 483, 485 (Mo.App. W.D.1989). A person commits the crime of driving while intoxicated if he operates a motor vehicle while in an intoxicated or drugged condition.

▇ § 577.010, RSMo 2000. A person is in an intoxicated condition when he is "under the influence of alcohol, a controlled substance, or drug, or any combination thereof." § 577.001.2, RSMo 2000. Although a *prima facie* case of intoxication is established under section 577.037.1, RSMo 2000, when a chemical analysis reveals a driver's blood alcohol concentration to be eight-hundredths of one percent or more, the presence of eight-hundredths of one percent by weight of alcohol in a driver's blood is not an essential element of the offense of driving while intoxicated. *Rose,* 86 S.W.3d at 105 (quoting *State v. Clarkston,* 963 S.W.2d 705, 711 (Mo.App. W.D. 1998)). Instead, the State may meet its burden of proof solely through the testimony of a witness who had a reasonable opportunity to observe the alleged offender. *Id.* Thus, a conviction for DWI does not necessarily constitute an alcohol related enforcement contact in that such conviction does not necessarily involve driving a vehicle while having an "unlawful alcohol concentration." In this case, the only evidence offered by the State regarding this conviction was that Mr. Martin was convicted of DWI involving alcohol. The State did not present any evidence that the DWI conviction involved driving with an unlawful alcohol concentration. The State failed, therefore, to prove that Mr. Martin had a prior alcohol related enforcement contact for purposes of enhancing the driving while revoked offense to a class D felony. Thus, Mr. Martin's claim that the trial court erred in sentencing him for a class D felony, on its face, demonstrates that plain error occurred.

▇ The next question in determining whether plain error review is appropriate is resolving whether a miscarriage of justice or manifest injustice will occur if the

---

ever, separated the two pages from Exhibit 6, which was given to the jury, and relabeled those two pages as Exhibit 7 for use in its own determination, sentence enhancement, because of the possible prejudicial effect of

the evidence on the jury. Nevertheless, as discussed above in the text of the opinion, certified copies of the individual convictions were also introduced at trial.

error is left uncorrected. The State argues that Mr. Martin will not suffer manifest injustice because, even if it failed to prove a prior alcohol related enforcement contact based on the DWI conviction, it did prove a prior alcohol related enforcement contact based on a prior chemical refusal revocation. As discussed above, under section 302.525.3, RSMo 2000, an alcohol related enforcement contact includes "any suspension or revocation entered in this or any other state for a refusal to submit to chemical testing under an implied consent law." Exhibit 6, a certified copy of Mr. Martin's Missouri Driver Record from the Driver and Vehicle Services Bureau, was admitted at trial without objection. It showed, among other things, a chemical refusal revocation effective June 30, 1993. This evidence was sufficient to prove that Mr. Martin's license had previously been revoked in Missouri for refusal to submit to chemical testing under an implied consent law. *See State v. Johnson*, 687 S.W.2d 706, 710 (Mo.App. W.D.1985)(certified copy of driver record showing defendant's license had been revoked was sufficient evidence to submit issue to jury of whether defendant's license was revoked, without submitting the order of revocation). Thus, the State proved a prior alcohol related enforcement contact, along with two prior driving while revoked convictions, subjecting Mr. Martin to an enhanced penalty under section 302.321.2, RSMo 2000. The trial court's sentencing Mr. Martin on the enhanced class D felony under section 302.321.2, RSMo 2000, did not, therefore, result in manifest injustice to Mr. Martin. The point is denied.

## III.

In his final point on appeal, Mr. Martin claims that the trial court erred in overruling his objection to the prosecutor's closing argument. He contends that the prosecutor misstated the facts during her closing argument.

 The trial court has broad discretion in controlling the scope of closing argument, and the court's ruling will only be reversed upon a showing of abuse of discretion resulting in prejudice to the defendant. *State v. Storey*, 40 S.W.3d 898, 910 (Mo. banc 2001), *cert. denied*, 534 U.S. 921, 122 S.Ct. 272, 151 L.Ed.2d 199 (2001)(quoting *State v. Deck*, 994 S.W.2d 527, 543 (Mo. banc 1999), *cert. denied*, 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999)). Even if the prosecutor's argument is improper, relief will be appropriate only if it is established that the comment had a "decisive effect on the jury's determination." *Id.* (quoting *State v. Armentrout*, 8 S.W.3d 99, 111 (Mo. banc 1999), *cert. denied*, 529 U.S. 1120, 120 S.Ct. 1986, 146 L.Ed.2d 813 (2000)). This standard is established upon a showing of "a reasonable probability that the verdict would have been different had the error not been committed." *Id.* (quoting *Deck*, 994 S.W.2d at 543).

 A prosecutor may comment on the evidence and the credibility of the defendant's case. *Id.* (quoting *State v. Hall*, 982 S.W.2d 675, 683 (Mo. banc 1998), *cert. denied*, 526 U.S. 1151, 119 S.Ct. 2034, 143 L.Ed.2d 1043 (1999)). A prosecutor may not, however, argue facts outside the record. *Id.* at 911 (quoting *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995)).

 Mr. Martin argues that the prosecutor misstated the facts when she stated during closing argument that he was found only five minutes after the trooper came upon the car that he had been chasing. He asserts that the improper argument prejudiced him by misleading the jury to believe that he had been arrested near the car, thus making it more likely that he was the driver. The argument claimed by Mr. Martin to have been a misstatement of the facts involves Trooper Shannon's testimony. The prosecutor's initial argument was as follows:

Next, we have to show that he operated a motor vehicle and that the defendant was Ronnie Martin. Ronnie Martin was identified by Caroline Wragg as the Ronnie Martin that drove the car that night, the same Ronnie Martin that is in the evidence that you saw with respect to the driver's license that was passed around; the same Ronnie Martin that Caroline Wragg talked about.

Also, that he operated a motor vehicle. Caroline Wragg told you that he operated a motor vehicle. Trooper Shannon sees a black male in a car, he gets a glimpse of him, it's nighttime, he knows it's a black male, he has a ball cap on. He follows them, looses them, and within five minutes of starting the pursuit he finds the car.

Caroline Wragg tells you that Ronnie Martin is the one who was driving the car that day. In fact, you saw her statement, the statement was passed around to you and you were able to read that statement.

The next thing that we must prove is that he drove the motor vehicle on the highway, Highway 371, and Trooper Shannon told you that he saw the gray Plymouth. The gray Plymouth was the one belonging to Caroline Wragg. He sees a black male driving it on 371 Highway, he follows it until he can't follow it without becoming a danger to the community, finds it within five minutes, the same car that he followed with the black male.

Caroline Wragg tells you the Ronnie Martin is the person who was chased by the police, who ran from the car when it stopped there at Hyde Park.

During rebuttal, the prosecutor made the following statements about which Mr. Martin complains:

You guys have heard the evidence and you will remember what the evidence was. And Trooper Shannon didn't say, No, this isn't the guy. Trooper Shannon said he got a glimpse of him and he was not able to identify him regardless of whether he was or not. The State is not saying Trooper Shannon can identify him.

But we want you to use your circumstantial evidence to make—to show the fact that Trooper Shannon saw the car, he saw the black male. That is the same car that drove and eluded him. The same person that was found five minutes later. The same person the Caroline Wragg identified as Ronnie Martin.

Reviewing the prosecutor's entire argument concerning Trooper Shannon demonstrates that she did not misstate the facts. The prosecutor's argument in context was that five minutes after ending the pursuit of a gray Plymouth driven by a black male whom he could not identify, Trooper Shannon found the same car again. The prosecutor also argued to the jury that the person Trooper Shannon saw driving the car was identified by Ms. Wragg as Ronnie Martin. These facts were testified to by Trooper Shannon and Ms. Wragg. The evidence and the prosecutor's closing argument were clear that the black male driving the car fled from the car after eluding Trooper Shannon and was not found that night. Even if the prosecutor misspoke that a person rather than the car was found five minutes later, the comment did not have a decisive effect on the jury's determination given a review of the prosecutor's argument as a whole. The third point is denied.

The judgment of conviction is affirmed.

NEWTON, P.J. and EDWIN H. SMITH, J. concur.