STATE of Missouri, Respondent,

v.

James J. DESTEFANO, Appellant.

No. 27387.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 10, 2007.

Margaret M. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. & Dora A. Fichter, Asst. Atty. Gen., Jefferson City, for respondent.

Before GARRISON, J., BARNEY, J., and LYNCH, J.

PER CURIAM.

James J. Destefano ("Appellant") was convicted of two counts of the Class B felony of distributing a controlled substance, violations of section 195.211.[1] Following a jury trial, Appellant was sentenced by the trial court to fifteen years in the Missouri Department of Corrections on each count with the sentences to run concurrently.[2] Appellant alleges two points of trial court error. He first takes umbrage with the trial court's admission of the entirety of an audio recording of a drug transaction which he contends included evidence of his bad character and irrelevant statements regarding prior incarceration and drug use. Second, he contends the trial court abused its discretion in excluding a witness from testifying at trial as a sanction for the witness's late endorsement by defense counsel.

Appellant does not challenge the sufficiency of the evidence to support his convictions. "Viewing the evidence in the light most favorable to the jury's verdict," *State v. Smith,* 185 S.W.3d 747, 751 (Mo. App.2006), the record reveals that Newton County Sheriff's Department Detective William Pike ("Detective Pike") recruited a confidential informant to introduce an undercover police officer, Christina Krogen ("Officer Krogen"), to Appellant so that Officer Krogen could attempt to buy drugs from Appellant. The confidential informant introduced Officer Krogen to Appellant in February of 2005. On March 3, 2005, Officer Krogen returned to Appellant's house alone and purchased half a gram of methamphetamine from Appellant for $50.00. Immediately after purchasing the drugs from Appellant, Officer Krogen gave the drugs to Detective Pike and the drugs field-tested positive for methamphetamine and amphetamine.

The following week, on March 9, 2005, Officer Krogen again purchased half a gram of methamphetamine from Appellant at his home.[3] The second drugs purchased

---

1. All statutory references are to RSMo 2000.

2. Appellant was also found to be a prior drug offender per sections 195.275 and 195.291.1. Although the trial court found "that [Appellant] is a prior drug offender ...," it failed to denote such a finding on its written judgment and sentence.

3. Although Officer Krogen believed she was purchasing half a gram of methamphetamine on each occasion, when the powder was later

also tested positive for methamphetamine. Both times Officer Krogen purchased drugs from Appellant she wore a recording device.

Appellant did not testify at trial nor present any evidence. At the close of all the evidence, the jury found Appellant guilty of two counts of distributing methamphetamine and he was later sentenced to two concurrent terms of fifteen years in the Missouri Department of Corrections. This appeal followed.

Appellant's first point relied on maintains the trial court abused its discretion in admitting over his objection the entirety of audio tapes of his drug transactions with an undercover police officer. He asserts that the "recordings were more prejudicial than probative because they contained minimal cumulative evidence of a drug transaction ..." as well as "evidence of Appellant's bad character, his prior drug use, and his prior prison commitment."

■ "The decision whether to admit evidence of other crimes largely rests on a determination of whether the probative effect of the evidence outweighs its prejudicial impact upon the appellant." *State v. Perkins*, 753 S.W.2d 567, 574 (Mo.App. 1988).

As previously stated, Officer Krogen made audio tape recordings of the two drug transactions at issue. Prior to trial, Appellant filed a motion *in limine* in which he sought to exclude certain portions of the audio recordings which he contended were unrelated to the drug sales because

they were highly prejudicial and outweighed any probative value.[4] At the hearing on Appellant's motion, the trial court ruled that the entirety of the audio recordings would be admissible at trial as long as the State was able to lay a proper foundation for the admission of the recordings. In making this ruling, the trial court implicitly denied Appellant's request to redact the audio recordings so as to excise the purported, prejudicial language.[5]

During the State's direct examination of Officer Krogen, the State moved to play the audio recordings for the jury. At that time, defense counsel renewed his objection to the introduction of the entirety of the audio recordings into evidence. The trial court overruled the objection and the audio recordings were played for the jury.

In the first audio recording, made on March 3, 2005, the confidential informant asked Appellant if Officer Krogen could purchase methamphetamine and Appellant noted he had to put the drugs in a cupcake wrapper because he did not have any baggies. Appellant then provided Officer Krogen with the requested methamphetamine.

During the course of the presentation of the second audio recording, made on March 9, 2005, Appellant warned Officer Krogen that the methamphetamine he was selling her was "more intense" than the previous methamphetamine she had purchased from him and that she should use less than she normally used because of its potency. The recording then recited how Appellant informed Officer Krogen that

weighed, the weight of the methamphetamine was determined to be 0.18 grams and .037 grams, respectively.

4. Appellant's motion *in limine* also sought to exclude audio recordings from February 24 and 25, 2005; however, the State indicated it did not intend to play those recordings for the jury. As such, they are not discussed here.

5. Neither the jury nor this Court was provided a professional transcription of these tapes, and any quotations which appear in this opinion were gleaned from listening to the actual recordings themselves and referring to the briefs as filed by the parties.

methamphetamine was an "aphrodisiac" and that she should use it in moderation because it would make her want to "f—— all night." The recording also recited that Appellant told Officer Krogen that when he and a female friend use methamphetamine together "she'll f—— . . . wow, man, her eyes will go and she'll spin like a mother f——er." Appellant also stated that his friend will "do a 20 and [he will] do a 30 . . . and it ain't like five minutes . . . when the rushing starts to slow down, she's pull her clothes off and it's time to f——. It's time to get it on." The recording also set out Appellant informed Officer Krogen that he had been using methamphetamine for 35 years and had "done" methamphetamine the previous night. He stated he did not like to sell it to strangers because he did not want to go back to prison. He told her he had been arrested previously because of "snitches and bitches," and that he did not make a lot of money selling methamphetamine, but he "like[d] getting high." He also told her he had given her a little extra methamphetamine "to make [her] tits hard" and told her that she should call him later for a "moustache ride."

■ As a general rule the "trial court has broad discretion in considering the admission of tape recordings; its determinations will not be disturbed on appeal absent a clear abuse of discretion." *State v. Isa,* 850 S.W.2d 876, 893 (Mo. banc 1993). " 'To establish an abuse of discretion, a defendant must show that reasonable persons could not differ as to the propriety of the trial court's ruling.' " *State v. Teague,* 64 S.W.3d 917, 922 (Mo. App.2002) (quoting *State v. Gateley,* 907 S.W.2d 212, 221 (Mo.App.1995)). "We review for prejudice and not mere error, and will affirm the trial court's ruling unless it was so prejudicial as to deprive the appel-

lant of a fair trial." *State v. Charlton,* 114 S.W.3d 378, 383 (Mo.App.2003).

■ "The admissibility of a tape recording will, however, depend on the particular circumstances of each case." *Isa,* 850 S.W.2d at 893. "[I]t is within the trial court's discretion to decide whether potentially inflammatory evidence should be admitted." *State v. Knese,* 985 S.W.2d 759, 768 (Mo. banc 1999).

■ We note that it is generally recognized that a criminal defendant has a right to be tried only for the offense for which he is charged. *State v. Pennington,* 24 S.W.3d 185, 189 (Mo.App.2000). "The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is not admissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Burns,* 978 S.W.2d 759, 761 (Mo. banc 1998). "Propensity to commit a crime is not a proper purpose for admission of evidence because it 'may encourage the jury to convict the defendant because of his propensity to commit such crimes without regard to whether he is actually guilty of the crime charged.' " *Pennington,* 24 S.W.3d at 189 (quoting *State v. Bernard,* 849 S.W.2d 10, 16 (Mo. banc 1993)). " 'Proffered evidence will run afoul of th[is] rule . . . if it shows that the defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes.' " *State v. Wallace,* 952 S.W.2d 395, 397 (Mo.App.1997) (quoting *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989)).

■ "To be admissible, evidence of prior bad acts must be 'both logically and legally relevant.' " *State v. Taylor,* 166 S.W.3d 599, 606 (Mo.App.2005) (quoting *State v. Roberts,* 948 S.W.2d 577, 591 (Mo. banc 1997)). " 'Evidence is logically rele-

vant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial' and such evidence 'is legally relevant, in that its probative value outweighs its prejudicial effect.'" *Id.* (quoting *Bernard*, 849 S.W.2d at 13).

■ Courts of this State have recognized six exceptions to the general rule prohibiting admission of evidence of uncharged misconduct. It has been held that

'[s]uch evidence is admissible if it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial; or (6) a signature modus operandi.'

*Taylor*, 166 S.W.3d at 605–06 (quoting *Roberts*, 948 S.W.2d at 591). "The defendant bears the burden of showing that the challenged testimony constituted evidence of other crimes." *Wallace*, 952 S.W.2d at 397.

■ In the present matter, the statements pointed out by Appellant, while no doubt offensive to many listeners, constituted part of the "sales pitch" to the prospective purchaser of his methamphetamine, Officer Krogen. Appellant's remarks are probative of his knowledge of the illicit nature of the methamphetamine in his possession and his intent to sell it. *See Charlton*, 114 S.W.3d at 382. Indeed, Appellant took great pains in elaborating on the drug's purported virtues, particularly with respect to its ability to induce positive sexual side-effects. Similarly, Appellant cautioned Officer Krogen about using methamphetamine in large quantities, and inferentially referred to its safety by relating he had been using it for the past 35 years, including the

previous evening, with no complications. Likewise, as part and parcel of his sales pitch, he attempted to draw Officer Krogen into his confidence by relating to her that while he did not like to sell to strangers because he did not want to go back to prison, he inferred that he trusted her and would sell methamphetamine to her. As further inducement for the purchase of his methamphetamine, Appellant informed Officer Krogen that he was giving her a little extra methamphetamine "to make [her] tits hard" and informed her that she should call later to enjoy a "moustache ride."

■ Based on the foregoing, it is our view that Appellant's remarks to Officer Krogen were logically relevant, in that they had some legitimate tendency to establish directly Appellant's guilt of the charges for which he was on trial. *See Taylor*, 166 S.W.3d at 606. Furthermore, assuming *arguendo* that the trial court erred in permitting the audio recordings in question to be played before the jury, the trial court's action was not so prejudicial to Appellant's case such that he was deprived of a fair trial. Appellant admitted as much in the argument portion of his appellate brief:

Officer Krogen explained both drug buys in detail and identified Appellant as the person who sold them to her. Det[ective] Pike corroborated some of her testimony, stating that he saw Appellant leading Officer Krogen inside his house before the March 9 transaction, and he also identified Appellant in court ... *There was nothing on the [audio recordings] that was not covered in the testimony of the State's witnesses.*

(Emphasis added.) There is nothing in the record to suggest that the audio recordings " 'so influenced the jury that, when considered with and balanced against

all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted [audio recordings].' " *State v. Bell,* 62 S.W.3d 84, 92 (Mo.App.2001) (quoting *State v. Barriner,* 34 S.W.3d 139, 150 (Mo. banc 2000)). The trial court did not abuse its discretion in allowing the jury to hear the audio recordings. *See Teague,* 64 S.W.3d at 923. Point One is denied.

■■■ In his second point on appeal Appellant asserts the trial court abused its discretion in excluding Bill Lewis ("Mr.Lewis") from testifying at trial as a sanction for defense counsel's late endorsement of Mr. Lewis as a witness. Specifically, Appellant maintains that he

disclosed [Mr.] Lewis as soon as he determined that [Mr.] Lewis could be used as a rebuttal witness, even if the disclosure was late, the State suffered little harm and even stated no objection to [Mr.] Lewis's testimony revealed in Appellant's offer of proof, yet Appellant suffered prejudice in being deprived of his opportunity to present a defense that might have altered the outcome of the case.

On the first day of trial, after *voir dire* and immediately following the lunch break, defense counsel presented the State with "the third amended answer to the [S]tate's request for disclosure." [6] This document apparently contained the name of a potential witness, Bill Lewis ("Mr.Lewis"), who had not been previously disclosed as a witness for the defense. The State argued that because the jury had already been seated there was no opportunity to *voir dire* them about any possible relationships with Mr. Lewis, and it was not "fair to the

[S]tate to have witnesses endorsed at this late date, and [the State] believes the only proper sanction is to exclude [Mr. Lewis's] testimony."

Defense counsel argued that he "just learned that we would be using Mr. Lewis as a witness this morning. He is essentially a rebuttal witness. . . ." Defense counsel stated that Mr. Lewis would testify that he had known Appellant for a number of years and he did not believe the voice on the audio recordings belonged to Appellant. Defense counsel admitted that the recording of the March 9, 2005, drug transaction was played for Mr. Lewis at "around ten o'clock" the morning of trial, but he stated that he had been previously unable to locate Mr. Lewis and did not hear from him until the Friday before trial.[7] However, Defense counsel admitted that although he had prepared the third answer to the State's request for disclosures the previous evening, he did not give a copy of it to the State until after the jury was seated. The trial court then expressed its concern that the jury had not been questioned regarding Mr. Lewis as a witness, but it, nonetheless, reserved its ruling on the admissibility of Mr. Lewis's testimony until the close of the State's case.

At the close of the State's case, defense counsel made an offer of proof of Mr. Lewis's testimony. Mr. Lewis related that on the morning of trial an investigator from defense counsel's office visited him at his place of business and played the March 9, 2005, audio recording for him. He stated that he has known Appellant for "[e]ight or nine years . . ." and that they had been neighbors on two separate occasions. Mr. Lewis stated that after listen-

---

**6.** This document was not included by Appellant in his record on appeal.

**7.** The record reveals the trial was held on Monday, September 14, 2005, and Mr. Lewis contacted defense counsel on Friday, September 9, 2005.

ing to the audio recordings, he "would say 98 percent of the time [he] did not believe [the voice on the recordings] to be [Appellant], and the other 2 percent [he] wasn't sure." He explained that Appellant "is an Italian" and they had "joked and teased about it. But at any rate, Italians don't talk. They yell. And they use their hands, and kind of an excitable type. And [he] didn't note that on that tape at all."

Following the offer of proof, the trial court sustained the State's earlier objection to the late endorsement of Mr. Lewis and excluded his testimony as a sanction for his late endorsement.

 The exclusion of the testimony of witnesses whose identity has not been properly disclosed is among the sanctions authorized by Rule 25.18.[8] *State v. Bowman*, 783 S.W.2d 506, 507 (Mo.App.1990). This drastic remedy should be used with utmost caution. *Id.* Rule 25.18 states:

If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule ... the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances. Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

 "Nevertheless, the imposition of the sanctions provided for in Rule 25.1[8], including exclusion of witnesses, remains within the discretion of the trial court and will be disturbed on appeal only when the sanction results in fundamental unfairness to the defendant." *State v. Lopez*, 836

S.W.2d 28, 32 (Mo.App.1992); *see State v. Miller*, 935 S.W.2d 618, 624 (Mo.App.1996). "Sanctions are within the discretion of the trial court." *Miller*, 935 S.W.2d at 623. "We will reverse where it can be shown that the trial court's action has resulted in fundamental unfairness to the defendant." *Id.*

Additionally, Rule 25.05 provides:

on written request by the [S]tate, the defendant shall disclose to counsel for the state ... [t]he names and last known addresses of persons, other than defendant, whom defendant intends to call as witnesses at any hearing or at the trial....

 A trial court has broad discretion in permitting or denying the late endorsement of witnesses. *See State v. Sweet*, 796 S.W.2d 607, 613 (Mo. banc 1990) (*abrogated on other grounds by Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991))

A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*State v. Downen*, 3 S.W.3d 434, 437 (Mo. App.1999). "As a matter of law, no abuse of discretion exists when the court refuses to allow the late endorsement of a defense witness whose testimony would have been cumulative, collateral, or if the late endorsement would have unfairly surprised the State." *State v. Williams*, 853 S.W.2d 371, 373–74 (Mo.App.1993).

Here, the trial court did not abuse its discretion in denying defense counsel's request for a late endorsement of Mr. Lewis

---

8. We note current Rule 25.18 was formerly Rule 25.16. *See State v. Puckett*, 146 S.W.3d 19, 24 (Mo.App.2004). All Rule references are to Missouri Court Rules (2006).

as a witness. In the present matter, defense counsel heard from Mr. Lewis on the Friday prior to the Monday trial setting yet he did not have him interviewed until 10:00 a.m. on the morning of trial; defense counsel admitted he drafted the third answer to the State's request for disclosures on the weekend prior to trial but did not present the State with a copy of the answer until after *voir dire* on the day of trial; and defense counsel never requested a continuance in this matter in order to locate, specifically, Mr. Lewis. *See State v. Jones,* 614 S.W.2d 774, 775 (Mo.App. 1981) (holding that the trial court did not abuse its discretion by excluding testimony of late endorsed witness where the State had properly requested discovery of witnesses and defense counsel did not advise the State of the name of the witness, who lived out-of-state, until late in afternoon on day before Thanksgiving when trial was scheduled for following Monday).

At the time defense counsel endorsed Mr. Lewis as a witness, the jury had already been seated and there would be no opportunity to determine if any members of the petit jury knew Mr. Lewis or would be influenced by his testimony. Denying defense counsel's request for the late endorsement of Mr. Lewis did not "result[ ] in fundamental unfairness or prejudice to [the] substantial rights of the defendant." *State v. Thomas,* 965 S.W.2d 396, 399 (Mo. App.1998). Here, there was a great deal of evidence which established that it was, in fact, Appellant's voice on the audio tapes and it does not appear that identification was an issue prior to defense counsel's attempt to have Mr. Lewis endorsed as a witness. Accordingly, the trial court did not abuse its discretion by not permitting Mr. Lewis to testify due to his late endorsement by defense counsel. *See Downen,* 3 S.W.3d at 437–38.

Furthermore, the trial court did not abuse its discretion in sanctioning defense counsel by excluding Mr. Lewis's testimony due to its late endorsement. As stated above, the exclusion did not "result[ ] in fundamental unfairness to [Appellant]." *Lopez,* 836 S.W.2d at 32; *see also State v. Wooten,* 735 S.W.2d 30, 31 (Mo.App.1987). Point Two is denied.

Lastly, we note Appellant was charged in the Amended Information as a prior drug offender pursuant to sections 195.275 and 195.291.1. Prior to trial, the trial court found "that [Appellant] is a prior drug offender ... in that the [S]tate has met its burden proving the conviction under Chapter 195 of a Class C felony." At Appellant's sentencing hearing, the trial court sentenced Appellant without mentioning its prior finding that Appellant was a prior offender. Additionally, the written judgment and sentence fails to reflect that finding.

▇▇▇▇ The trial court's authority to determine a criminal defendant's sentence is conferred by sections 195.275 and 195.291 upon a finding that, *inter alia,* Appellant is a prior offender. "Once a trial court finds facts beyond a reasonable doubt showing that a defendant has been found guilty of [a prior drug offense per section 195.291], it has no discretion but to find [Appellant] to be a [prior] offender." *State v. Jordan,* 947 S.W.2d 95, 97 (Mo. App.1997). "Having made that prior determination, the enhancement provision is automatic, and a trial court is not obligated to repeat at sentencing a previous finding that the defendant was a prior ... offender or even to mention those findings during the sentencing hearing." *Id.*

▇▇▇ In the instant matter, the trial court made the necessary findings prior to trial and then failed to mention Appellant's prior offender status at the sentencing hearing or to note its finding on the judgment and sentence. We note that such failures "during the formal pronouncement

of sentence [are] irrelevant." *Id.* Additionally, the trial court failed to make several other notations on its judgment and sentence. Despite the fact that Appellant informed the trial court that he did not "know of any just or legal reason ... why the Court should not pronounce [his] sentence," the trial court failed to mark the box on the judgment and sentence form which indicated that it made such a finding.[9] Further, the trial court found "there's no probable cause to believe that [Appellant] received ineffective assistance of counsel;" however, it failed to mark the box on the sentence and judgment form which indicated that it had or had not found probable cause "to believe that defendant has received ineffective assistance of counsel."

It is apparent that the "failure to memorialize accurately the decision of the trial court as it was announced in open court was clearly a clerical error." *State v. Taylor,* 123 S.W.3d 924, 931 (Mo.App.2004). "Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission." *State v. Booyer,* 87 S.W.3d 926, 931 (Mo.App.2002). Accordingly, we remand this case with instructions to the trial court to enter a written judgment and sentence reflecting Appellant's prior offender status; reflecting the fact that Appellant knew of no reason why he should not be sentenced; and reflecting the fact that the trial court found no probable cause to believe Appellant received ineffective assistance of counsel. The trial court's judgment and sentence is otherwise affirmed.

---

9. We also observe that the unmarked box on the judgment and sentence form states: "The court informed the defendant of verdict/finding, asks the defendant whether (s)he has anything to say why judgment should not be pronounced, and finds that no sufficient cause to the contrary has been shown or appears to the court."