**STATE of Missouri, Plaintiff–Respondent,**

v.

**Dewey O. HOPPER, Jr., Defendant–Appellant.**

**No. SD 29638.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 19, 2010.

Rehearing Denied March 12, 2010.

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and Terrence M. Messonnier, Jefferson City, MO, for Respondent.

DON E. BURRELL, Judge.

Dewey "Buddy" Hopper ("Defendant") was convicted, following a jury trial, of forcibly raping J.T. ("Victim").[1] He was thereafter sentenced as a persistent offender to serve thirty years in the Missouri Department of Corrections. Defendant asserts two points on appeal: 1) that the trial court abused its discretion in not allowing him to present an alibi defense; and 2) that the trial court abused its discretion in not allowing Defendant to present evidence of a subsequent false allegation of sexual assault Victim had made against another individual. Finding merit in Defendant's first point, we reverse his conviction and remand the matter for a new trial.

**Facts and Procedural Background**

Viewed in the light most favorable to the jury's verdict, *State v. Cox,* 248 S.W.3d 720, 721 (Mo.App. S.D.2008), the evidence was as follows. Victim has Williams' Syndrome, a physical and mental developmental disability that makes her loving, gentle, trusting, sweet, and very caring, as well as fragile, rather weak, and small in stature. During the timeframe of the alleged offense, Defendant was "dating" Victim's older sister, and Defendant, Victim, Victim's mother, and Victim's older sister were all living together in the same house.

On July 5, 2004, Victim's grandfather became ill, and Victim's mother and older sister took him to the hospital. Defendant and Victim stayed home. Victim decided to go swimming and went to her room to put on her bathing suit. Defendant then came into Victim's room and told her to take off her clothes. Victim said, "I was scared at first, but he forced me afterwards." She first told Defendant no, but he then yelled at her and she complied because she was scared.

After Victim took her swimming suit off, Defendant pulled down his pants and underwear and told Victim to put his penis in her mouth. After first telling him no, she complied. Victim also testified that Defendant had a tattoo on the upper side of his penis that read, "One hundred percent beef." Defendant then got on top of Victim and "stuck his penis inside [her] as hard as he could" after putting lotion on it. Victim testified that it hurt and she "asked him to stop and he wouldn't."

While he was raping Victim, Defendant told Victim that if she told anybody he would kill her. Defendant also told Victim that he had previously raped a thirteen-year-old girl. After the incident was over, Victim stated that she "put on [her] bathing suit and went outside, went to the garden and picked tomatoes and lettuce, cucumbers and corn." Victim also went swimming. Defendant was with Victim while she picked the vegetables and while she was swimming.

Victim testified that "this" had later happened "a couple of more times" with Defendant on occasions when he did not voice any threats, but she "went along" out of fear that he would kill her if she did not.

1. *See* section 566.030. Unless otherwise indicated, all statutory references are to RSMo 2000, and all rule references are to Missouri Court Rules (2009).

Because Victim was afraid for her life, she did not tell anyone about what Defendant had done until March of 2005.

In March of 2005, Victim was eating dinner with her mother, her sister, and her sister's new husband. They were all teasing each other and Victim's sister said, "[Victim], you've put on weight. Are you having sex? Are you messing around with somebody?" In response, Victim said, "I'm sorry, Sis, you're going to be mad at me, but it was [Defendant]." Victim then told them that Defendant had made her get on the bed and have sex with him while everyone else was at the hospital with Victim's grandfather.

Officer Jack Powell ("Officer Powell") was the City Marshal in March of 2005. Officer Powell received a telephone call from Victim's mother on March 9, 2005.[2] During that call, Victim's mother claimed that her daughter had been raped. Officer Powell met Victim at the emergency room and took statements from Victim, Victim's sister, and Victim's mother.

The next day, Officer Powell interviewed Defendant. During that interview, Defendant told Officer Powell that he "wasn't there during that day[,] period[.]" Defendant told Officer Powell that he had been at his father's house in Cardwell, Missouri on the day in question. Officer Powell testified that he was unable to confirm Defendant's alibi claim because he was "unable to get anything from any of these folks [Defendant] was supposed to have been with." Officer Powell tried, without success, to get messages to Defendant's family by contacting Cardwell law enforcement officers and asking them to attempt to locate the family members in question and relay a message that they should call Officer Powell.[3]

On June 28, 2006, the State filed an information charging Defendant with forcible rape and a request that Defendant disclose "any notice of any intent to possibly rely on alibi[.]"[4] The Office of the Public Defender was appointed to represent Defendant, and Christopher Wynes, an attorney with the Public Defender's Caruthersville office, was Defendant's first attorney in the case. Over the course of Defendant's case, he was represented by at least four different assistant public defenders, the final one being Brandon Sanchez ("trial counsel").

One of Defendant's prior attorneys, Lesley Lynn ("Ms. Lynn"), was allowed to withdraw as Defendant's attorney after she informed the court that Defendant had (in the presence of a corrections officer) threatened to physically harm her. Two days after Ms. Lynn was allowed to withdraw, the original trial judge recused himself from the case when the prosecutor filed new criminal charges against Defendant based on an allegation that Defendant had threatened to harm the judge with an

---

2. The transcript actually indicates the year as "2004," but this appears to either be a transcription error or a misstatement by Officer Powell.

3. All of these references by Officer Powell to "these folks" and "family members" and that "they" should get in touch with him seem to indicate that he understood at the time of his first interview of Defendant that Defendant was claiming to have been with more persons than just his father at the time of the alleged incident.

4. Although an entry in the trial court's docket sheet dated 6/28/06 indicates a "Motion for Disclosure" was filed by the State and we presume such a motion would have been made in writing as required by Rule 25.05, no such writing is included in the record on appeal. The only other reference to the State's alibi disclosure request occurs during a bench conference at trial. When the prosecutor mentioned the disclosure request, defense counsel made no attempt to dispute that such a request had, in fact, been made.

assault rifle.[5] Trial counsel filed his entry of appearance less than six months before Defendant's case was tried.

About two weeks before trial was to begin, trial counsel went through his case file and discovered notes made by an investigator some three years earlier. These notes were from interviews of potential witnesses who indicated they would be able to provide Defendant with an alibi. Ten days before trial,[6] trial counsel filed a written notice of intent to rely on the defense of alibi.[7] That written notice stated that on the entire day of the charged offense, Defendant was in Bragg City with his former girlfriend, Denise Thompson (formerly Taylor).[8] According to trial counsel, the previous attorney assigned to Defendant's case (Ms. Lynn) had apparently decided not to call these witnesses because their testimony differed from what Defendant had told the police—that he had been with his father in Cardwell on the day in question.[9] In arguing to the court that Defendant should be allowed to present alibi evidence despite the late notice, trial counsel stated he had originally intended to proceed based on the theory of defense worked out by Ms. Lynn. Then, in going back over the file, he discovered the alibi testimony at issue and decided it would be best to proceed with a defense based upon that testimony.

The State responded that the witnesses should not be allowed to testify because: 1) the information about what these witnesses would say had been in the possession of the Public Defender for several years and had never been disclosed to the State; 2) Defendant had not responded to the State's June 28, 2006, request that he disclose any intent to rely on an alibi defense; and 3) Defendant's November 21st disclosure of an intent to rely on alibi came after trial counsel knew that the prosecutor trying the case would be out of the country the following week and would therefore not have the ability to investigate or depose the witnesses prior to trial.

5. Defendant's compliance with the rules of the legal system he now turns to for relief has been less than stellar. After originally being released on bond, Defendant failed to appear in court as directed on several occasions and was eventually surrendered by his bonding company and held in the county jail without bond. Defendant subsequently escaped from jail and was at large for five days before he was caught in Cardwell and taken back into custody. Because the errors Defendant alleges occurred after the time of his recapture, the "escape rule" does not bar his appeal. *Robinson v. State*, 854 S.W.2d 393, 396 (Mo. banc 1993). "Once a defendant escapes and has been returned to custody, he is entitled to appeal any errors that occurred post-capture." *Fogle v. State*, 99 S.W.3d 63, 65 (Mo. App. E.D.2003).

6. The Thanksgiving holiday occurred within this ten day period.

7. Trial counsel must have immediately informed the prosecutor about his discovery of the potential alibi testimony because the attorneys apparently had a telephone conference with the trial court about the issue on or about the date the notes were discovered. The court apparently indicated at that time that it would not be allowing Defendant's alibi witnesses to testify at trial. No record of this telephone conference was made and no indication of its having occurred appears in the court's docket entries, but the parties made reference to it when they made a record on various pre-trial motions on the first morning of trial.

8. The notice went on to state that, "[Defendant] may have traveled at different times through out [sic] the day but was never out of the company of Denise Thompson."

9. Trial counsel informed the court that he also intended to call Defendant's father as a witness, who trial counsel believed would testify that Defendant was at his home briefly on July 4th and was accompanied by Denise Taylor. Trial counsel indicated that all of his alibi witnesses were present and available to testify.

The State stipulated that Defendant could use the investigator's notes as a sufficient offer of proof as to what the testimony of the witnesses would be. Those notes were marked and preserved for the record as Exhibit A. An examination of Exhibit A reveals the following:

Amanda Mahan would have testified that she was staying with her parents in Bragg City, Missouri during the time of July 4th and 5th, 2004. She remembers that Defendant came to stay at her parents' house during that holiday and was there all week, staying the nights there. He was there on July 5, 2004.

Denise Taylor stated that Defendant arrived at their house in Bragg City on July 3rd, 2004, and remained there until July 7, 2004.[10] Defendant was with her on July 5, 2004, when they went swimming at the Ben Cash area and after swimming they returned to Bragg City. Defendant did not have a car, so the Taylors drove him around.

Glenda Taylor stated that Defendant was at her house on July 5, 2004, and that Defendant, Timmy Taylor, and Wesley Taylor went somewhere in Tennessee to swim, and came back later to her house and stayed there all week. Defendant did go to Caruthersville, Missouri to see someone named "Stacy Boniford."

Timmy Taylor would have testified that Defendant came to his house in Bragg City on July 3, 2004, and stayed there the whole week. On July 5, 2004, they all went swimming at the Ben Cash area, got home around 6:00 p.m., and Defendant stayed the night that night and also stayed with them for several more days.

Wesley Taylor stated that Defendant came to his house in Bragg City on July 3rd, 2004, and stayed there for about a week. He would have testified that on July 4, 2004, he, Timmy, Denise, and Defendant went swimming at the Ben Cash conservation Area, came back to the house in the afternoon, and that Defendant helped him with yard work on July 5, 2004, and stayed for several more days.

Dewey Hopper, Sr., Defendant's father, would have testified that July 4 is his birthday, and that Defendant came to his house with his girlfriend, Denise, on July 4, 2004. The two stayed to visit for awhile, then left to go to a fireworks show in Caruthersville. Hopper, Sr. also stated that he believed [Defendant] went to Ben Cash Lake the next day.

Consistent with the position it had previously expressed during the parties' conference call, the trial court denied "[Defendant's] request to present evidence from these various witnesses with regard to alibi."

### Standard of Review

In general, the decision to exclude evidence as a sanction for the violation of discovery rules is left to the discretion of the trial court. *State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007). However,

[t]he sanction is used sparingly against a defendant in a criminal case because of the trial court's duty to ensure a fair trial by allowing the defendant to put on a defense. A defendant in a criminal case has a constitutional right to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

**10.** In regard only to Denise Taylor, Exhibit A actually lists these dates as *May* 3rd to 7th, and July 5th. As the information she provided is otherwise consistent with the July dates given by the other witnesses, this reference to May appears to be a scrivener's error.

When it comes to applying evidentiary principles or rules, the erroneous exclusion of evidence in a criminal case creates a rebuttable presumption of prejudice. *Burton v. State,* 641 S.W.2d 95, 99 (Mo. banc 1982); *State v. Rhodes,* 988 S.W.2d 521, 529 (Mo. banc 1999). The state may rebut this presumption by proving that the error was harmless beyond a reasonable doubt. *State v. Sanders,* 126 S.W.3d 5, 23 (Mo.App.2003).

*Id.* "As a matter of law, no abuse of discretion exists when the court refuses to allow the late endorsement of a defense witness whose testimony would have been cumulative, collateral, or if the late endorsement would have unfairly surprised the State." *State v. Destefano,* 211 S.W.3d 173, 181 (Mo.App. S.D.2007) (quoting *State v. Williams,* 853 S.W.2d 371, 373–74 (Mo. App. E.D.1993)). "We will reverse where it can be shown that the trial court's action has resulted in fundamental unfairness to the defendant." *Destefano,* 211 S.W.3d at 181 (quoting *State v. Miller,* 935 S.W.2d 618, 623 (Mo.App. W.D.1996)).

### Analysis

*Point I: Exclusion of Defendant's Alibi Defense*

■ Defendant's first point on appeal alleges the trial court abused its discretion in refusing to allow Defendant's alibi evidence because it deprived him of his constitutional right to present a defense and it was fundamentally unfair to exclude it because the State had known for three-and-a-half years before trial that [Defendant] had "claimed the defense of alibi when he was first interrogated about the allegation by Officer Powell, trial counsel had entered his appearance only four months before trial and disclosed his intent to rely on the defense as soon as he reviewed the witnesses statements, and the court considered no other alternatives to excluding the witnesses' testimony."

Officer Powell testified at trial that he interviewed Defendant about the incident on March 9, 2005, and "[t]he only thing [Defendant] would tell me was that he wasn't there during that day period, that he was at his father's. And I was unable to confirm that because I was unable to get anything from any of these folks he was supposed to have been with."

■ "The purpose of the criminal discovery rules, including Rule 25.05, is to eliminate surprise by 'allow[ing] both sides to know the witnesses and evidence to be introduced at trial.'" *Walkup,* 220 S.W.3d at 753 (quoting *State v. Whitfield,* 837 S.W.2d 503, 508 (Mo. banc 1992)) (brackets in original). Rule 25.05 states that "on written request by the [S]tate, the defendant shall disclose to counsel for the state … [t]he names and last known addresses of persons, other than defendant, whom defendant intends to call as witnesses at any hearing or at the trial…." *Destefano,* 211 S.W.3d at 181 (brackets as in original).

■ In general, "[w]hen a party fails to comply with a discovery rule, the trial court may order disclosure of material and information, grant a continuance, exclude evidence or enter such orders it deems just given the situation." *State v. Massey,* 867 S.W.2d 266, 268 (Mo.App. E.D.1993) (citing Rule 25.18). "The exclusion of the testimony of witnesses whose identity has not been properly disclosed is among the sanctions authorized by Rule 25.18." *Destefano,* 211 S.W.3d at 181. "In fashioning sanctions or remedies for a discovery violation, generally the focus is the removal or amelioration of any prejudice which the State suffers due to the violation." *State v. Simonton,* 49 S.W.3d 766, 781 (Mo.App. W.D.2001) (quoting *Massey,* 867 S.W.2d at 268).

However, "[t]he exclusion of an alibi witness as a sanction for a discovery violation is a drastic remedy." *Massey*, 867 S.W.2d at 268. "The remedy of disallowing an alibi witness to the defendant is almost as drastic, if not as drastic, as declaring a mistrial." *State v. Mansfield*, 637 S.W.2d 699, 703 (Mo. banc 1982).[11] "The remedy of disallowing the relevant and material testimony of a defense witness essentially deprives the defendant of his right to call witnesses in his defense." *Id.* As earlier indicated, "[t]he standard by which the exclusion of testimony for failure to comply with discovery rules must be tested is whether such action resulted in fundamental unfairness to the defendant." *Massey*, 867 S.W.2d at 270. In this case, Defendant freely admits the discovery violation but challenges the severity of the sanction imposed.

In analyzing whether the trial court's exclusion of Defendant's witnesses was fundamentally unfair, we first consider "the harm suffered by the State if [the witnesses] had been allowed to testify . . . without prior disclosure. . . ." *Simonton*, 49 S.W.3d at 781. "This is addressed in light of the purpose of the disclosure rule which was violated." *Id.* "Therefore, the review of the propriety of the trial court's action includes consideration of whether the State was unfairly surprised by [the alibi witness's] testimony and the harm, if any, it would have suffered by virtue of that surprise." *Id.*[12]

Although the State claims it would have been unfairly prejudiced at trial as a result of the late endorsement of the witnesses, "[t]he mere fact of late endorsement does not in itself show prejudice." *State v. Cameron*, 604 S.W.2d 653, 657–659 (Mo.

App. E.D.1980). "The initial consideration, whether the State would have suffered prejudice by permitting the witness to testify, is important because where the prejudice to the State is nonexistent or negligible, the imposition of the drastic sanction of witness exclusion is not necessarily appropriate." *State v. Martin*, 103 S.W.3d 255, 260 (Mo.App. W.D.2003).

In *Martin*, an officer pursued a vehicle that was being driven in a dangerous manner, including driving at an extremely high rate of speed and passing other vehicles to evade the officer. *Id.* at 258–59. Instead of engaging in a high-speed pursuit, the officer followed from a distance and later located the vehicle when it had pulled to the side of the road. *Id.* at 259. When the officer arrived, the occupants were all standing outside the vehicle. *Id.* The State charged the defendant as the driver. *Id.* The defendant's wife and the other female occupant were not charged with any crime. *Id.*

At trial, the defendant attempted to call his wife to testify that a man named "Brian," whom they had just met in Kansas City, had actually been driving the vehicle and fled the scene before the officer arrived. *Id.* She did not know Brian's last name, where he lived, or how to contact him. *Id.* The Western District held that the State was prejudiced by the failure to previously disclose the alibi because it denied the State the opportunity to identify, locate, and obtain a statement from the person the defendant alleged was actually driving the speeding vehicle. *Id.* at 261.

In the instant case, Defendant's alibi witnesses were identified, available, and waiting to testify. At a minimum, the

---

**11.** *Overruled on other grounds by State v. Clark*, 652 S.W.2d 123 (Mo. banc 1983).

**12.** In *Simonton*, the reviewing court noted that, "If the State needed additional time to prepare, it could have requested a continuance." *Id.* at 782–83.

State could have requested a recess to allow it an opportunity to interview each of the witnesses about what their testimony would be. If the results of those interviews revealed good reasons why the State could not be prepared to address their testimony without conducting additional discovery, those reasons could then have been presented to the trial court.

The instant case is further distinguishable from *Martin*, in that, here, the State knew Defendant claimed he had at least one alibi witness (if not more) at the time of his arrest. In *Martin*, the State had no advance warning that the defendant would be claiming that someone else had been driving the vehicle. *Id.* at 260–61. Finally, in the instant case, Defendant gave oral notice of his intent to rely on alibi witnesses fourteen days prior to trial and formally endorsed them in writing three days later. In *Martin*, the defendant did not endorse his alibi witness at all and did not realize he had failed to do so until he attempted to call her to testify at trial. *Id.* at 259. "Additionally, the potential unfairness to the State was compounded by the fact that [the defendant's] late endorsement of [the witness] came after the State had rested its case in chief and its witnesses had been excused." *Id.* at 261. Clearly, the scenario set forth in *Martin* differs significantly from the case at bar.

The State argues it was prejudiced because Defendant failed to ask for a continuance when he endorsed his alibi witnesses. In *State v. Skinner*, 734 S.W.2d 877 (Mo.App. E.D.1987), the Eastern District upheld the trial court's decision to allow the State to endorse witnesses both four days prior to trial and after trial had begun. *Id.* at 885–86. The *Skinner* court

reasoned that the late endorsements were not fundamentally unfair because *defense counsel* failed to request an opportunity to interview the first witness or seek a continuance.[13] *Id.* at 886. By placing the onus on the defendant to request relief, the holding in *Skinner* suggests that were the situation reversed, it would be up to the State to request whatever relief it thought was necessary to effectively deal with the matter instead of requiring the defendant to suggest the form of relief he thought the State might need.

Finally, the State argues it had no idea that Defendant would claim he had been with the Taylor family at the time of the alleged rape. Even if we presume this to be true, the State does admit that it "knew that [Defendant] might claim that he was with his father at the time." If the State had followed up on Defendant's initial alibi claim as understood by Officer Powell, it would have discovered at a minimum that Defendant's visit with his father occurred on July 4th, that Denise Taylor was with Defendant at the time, and that Defendant was accompanied by Ms. Taylor when they left.

■ After considering "the harm to the State as a result of defense counsel's discovery violation, the inquiry must now turn to the prejudice suffered by [Defendant] in excluding [the alibi witness's] testimony." *Simonton*, 49 S.W.3d at 783. Clearly, the anticipated testimony of the alibi witnesses was relevant and material to the defense. "To determine whether the exclusion of the witnesses' testimony resulted in prejudice, the facts and circumstances of the particular case must be examined including: (1) the nature of the charge; (2) the evidence presented; and

---

**13.** Defense counsel had asked for and received an opportunity to interview the witness the State had endorsed during trial; he did not request a continuance. As a result, the

defendant could not complain on appeal about having received the relief his counsel had requested.

(3) the role the excluded evidence would have played in the defense's theory." *Massey*, 867 S.W.2d at 269.

 Because the conduct charged by the State was alleged to have occurred on a specific date, July 5th, if the jury had been allowed to hear the excluded testimony and found it credible, Defendant could not have been convicted of the offense charged. "[A] prosecuting attorney in a criminal case acts as a quasi-judicial officer representing the people of the State; his duty is not to convict at any cost but to see that justice is done and that the accused receives a fair and impartial trial." *Id.* at 270.

An instructive case is *State v. Mansfield, supra.* In that case, as in the instant case, the alibi claimed by the defendant did not exactly match up with the statements of his alibi witnesses, but they were similar. 637 S.W.2d at 702. Our Supreme Court found that the State was on notice that the defendant would claim to have been with an alibi witness during at least a portion of the relevant time frame, based on statements he had made to the police during their initial investigation of the crime. *Id.* Although the defense failed to follow the discovery rules, our high court reversed the conviction based on the trial court's decision to exclude the alibi testimony. *Id.* at 703–04.

 "Exclusion of a witness may be proper when no reasonable justification is given for the failure to disclose the witness." *Martin*, 103 S.W.3d at 261. "If an explanation tends to show good cause for the nondisclosure, exclusion of a significant defense witness would likely be an abuse of discretion." *Id.* This court has previously reversed a judgment of conviction and remanded the case when the defendant's alibi witness was not disclosed until the morning of trial and the defense's only "good cause" was "lack of time and man-

power" in the Public Defender's office. *See State v. Gooch,* 659 S.W.2d 342 (Mo. App. S.D.1983). In *Gooch,* also a rape case, the assistant public defender trying the case did not "personally" know that the defendant had an alibi until the day of trial. *Id.* at 343. He stated that "due to lack of time and manpower his office had not been able 'to do everything' regarding this case." *Id.* This court concluded that in a rape prosecution where the defendant says he was not with the victim on the date in question, disallowing an alibi witness was too drastic a remedy. *Id.* at 344.

We cannot say that the "cause" asserted in this case—that trial counsel was the fourth attorney assigned to the case and had originally planned to follow a previous attorney's strategy in the case—was not as good as that asserted in *Gooch.* Here, trial counsel reviewed the case file and found the alibi information approximately two weeks before trial (not the morning of) and immediately informed the State and the court.

"The ultimate question for this court to determine is whether the exclusion of [the alibi witnesses'] testimony 'substantively altered the outcome of the case.'" *Simonton*, 49 S.W.3d at 783 (quoting *State v. Hunter*, 957 S.W.2d 467, 469–70 (Mo.App. W.D.1997)). The anticipated testimony of the alibi witnesses as set forth in the stipulated offer of proof would have resulted in Defendant's acquittal if believed by the jury. As a result, the State cannot show that its exclusion was harmless beyond a reasonable doubt. *See Walkup,* 220 S.W.3d at 757; *Simonton,* 49 S.W.3d at 783.

In summary, the prejudice to Defendant was great, while the prejudice to the State was minimal and could have been relieved by less drastic means. As in *Simonton,* we are firmly convinced that the exclusion

of Defendant's alibi witnesses was too drastic a remedy. *See Simonton,* 49 S.W.3d at 785–86 ("The trial court should have fashioned some other remedy to alleviate any harm to the State, while at the same time protecting [the defendant's] right to present such [ ] vital witness[es] to his defense.") Point I is granted.

### Point II: Exclusion of Victim's Subsequent Allegation of Sexual Assault

In his second point, Defendant argues the trial court abused its discretion in not allowing him to present evidence he says shows Victim made a false allegation of sexual assault against another individual in January of 2006—a year-and-a-half after the date of the criminal conduct charged to Defendant. Defendant argues that refusing to allow him to present this testimony denied "his due process rights to a fair trial and to present a defense" as it was "relevant to challenge [Victim's] veracity."

Because the case must be remanded for a new trial based on Defendant's first claim of error, and we cannot predict what evidence will be presented on retrial, we need not rule on his second. "Upon retrial, should the criticized evidence be offered again, the parties and the court will have the benefit of the research reflected in their briefs here." *Carder v. Eaton,* 629 S.W.2d 553, 555 (Mo.App. W.D.1981).

The judgment of conviction and sentence is reversed and the matter is remanded for a new trial consistent with this opinion.

BARNEY, J., and BATES, P.J., Concur.