**STATE of Missouri, Plaintiff–Respondent,**

v.

**Benjamin R. GRAHAM, Defendant–Appellant.**

**No. SD 30652.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 5, 2011.

Kent Denzel, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Benjamin R. Graham ("Appellant") was convicted by a jury of selling a controlled substance (i.e., forty prescription pills of diazepam) to an undercover law enforcement officer, in violation of § 195.211.[1] The jury assessed punishment at imprisonment for ten years, and the trial court subsequently sentenced Appellant to imprisonment for ten years. Appellant appeals from the judgment claiming that the trial court erred in excluding two exhibits. The exhibits contained certified copies of felony criminal charges against a non-witness informant, who initiated and arranged the sale, and that were pending at the time of the sale. We find no error or prejudice to Appellant, and affirm the judgment.

**Facts and Procedural History**

Appellant does not claim that the evidence was insufficient to support his con-

---

1. All references to statutes are to RSMo Cum. Supp.2003, unless otherwise specified.

viction. Accordingly, we set forth only those facts necessary to resolve the issue Appellant raises in this appeal. We view the evidence and inferences in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v. Wolfe*, No. SD 27953, 2011 WL 2135637, at *1 (Mo.App. S.D. May 31, 2011); *State v. Barriner*, 111 S.W.3d 396, 397 (Mo. banc 2003); *State v. Williams*, 97 S.W.3d 462, 466 (Mo. banc 2003). Viewed in this light, the evidence established the following facts.

On June 23, 2008, Appellant sold South Central Drug Task Force Officer Seth Walker forty pills of diazepam (also known as valium) for $40. The sale took place at Buehler Park in Rolla, Phelps County. Officer Walker was working as an undercover officer and recorded the sale on an audio recorder. An informant arranged the sale. Officer Walker was not present for the conversations between the informant and Appellant that led to the sale, and these preliminary conversations were not recorded. Diazepam is a Schedule IV controlled substance.

In the course of the sale, Officer Walker drove his vehicle to Buehler Park. Appellant approached Officer Walker's vehicle, and spoke to Officer Walker through Officer Walker's vehicle window. Appellant stated "he had 44 Valium pills for sale." Officer Walker only had enough money for forty pills, and returned four of the pills to Appellant. Appellant told Officer Walker that he got the pills from Appellant's mother, and also discussed with Officer Walker a possible future transaction involving oxycontin. Also in the course of the sale, Officer Walker told Appellant words to the effect "[t]hese are not for me" in order to explain why Officer Walker then called a third person to verify the nature of the pills. Officer Walker had met Appellant before the sale.

Officer Walker provided the following information in response to questions from trial defense counsel. Officer Walker explained that informants may be seeking leniency on existing charges, may volunteer, or may work for pay. Officer Walker was "not for sure" if the informant that arranged Appellant's sale "volunteered or was ... hoping for leniency."

After this testimony, the following exchange occurred:

[APPELLANT'S COUNSEL]: All right. Fair enough. I'm not trying to trick you on that. I just wondered if you knew. Are you familiar with a drug called methamphetamine?

[OFFICER WALKER]: Yes.

[APPELLANT'S COUNSEL]: Okay. And tell the jury what that drug is used for, if you know.

[STATE'S COUNSEL]: Judge, I'm going to object.

(COUNSEL APPROACHED THE BENCH AND THE FOLLOWING PROCEEDINGS WERE HELD:)

[STATE'S COUNSEL]: What's the relevance of meth today?

[APPELLANT'S COUNSEL]: The relevance of meth today is that [the informant] had charges pending while this was taking place, charges that were filed by this prosecutor. Now, this witness has testified that sometimes confidential informants will agree to work after they've been arrested in hopes of leniency. We want to establish what the basis for this confidential informant's cooperation was and—

THE COURT: There is no—

[APPELLANT'S COUNSEL]: I am going to ask some additional questions about these arrests and pending charges of [the informant]. I have certified copies of records.

THE COURT: What is your response to that?

[STATE'S COUNSEL]: You have to have [the informant] here. His criminal arrests don't mean anything but a criminal conviction is what can come in. It's only if [the informant] is on [the] stand.

[APPELLANT'S COUNSEL]: Actually, Your Honor, under *State v. Joyner* (phonetic spelling), if there is a witness—a potential witness that faces pending charges by the same prosecutor prosecuting [the] case, arrests and pending charges do come in.

[STATE'S COUNSEL]: He has no pending charges.

[APPELLANT'S COUNSEL]: He had some charges at the time that this was taking place.

Following a recess and in-chambers conference between the trial court and counsel, the trial court sustained the State's objection.

Trial defense counsel also made clear to the jury that Officer Walker was "not aware of [the informant's] criminal history" at the time of Appellant's sale, and that "people who have charges pending" "frequently" work with Officer Walker "in the hopes of getting leniency," as the following questions and answers show:

[APPELLANT'S COUNSEL]: Okay. And you said you were not aware of [the informant's] criminal history at that time?

[OFFICER WALKER]: Correct.

. . . .

[APPELLANT'S COUNSEL]: So you were not aware that [the informant] had pending felony charges against him at the time of this transaction?

[OFFICER WALKER]: Correct.

[APPELLANT'S COUNSEL]: Okay. Or what the ranges of punishment were on that?

[OFFICER WALKER]: Correct.

[APPELLANT'S COUNSEL]: But frequently in your work, you work with people who have charges pending and they work with you in the hopes of getting leniency?

[OFFICER WALKER]: Yes.

[APPELLANT'S COUNSEL]: And if somebody were facing, say, 26 years and wound up being sentenced to 4 years and wound up serving less than 8 months, that would be pretty lenient, wouldn't it?

[OFFICER WALKER]: I'd say that would be pretty usual [sic].

[APPELLANT'S COUNSEL]: That's a good deal, isn't it?

[OFFICER WALKER]: Sure seems like it.

Trial defense counsel also asked Appellant the following question during direct examination:

[APPELLANT'S COUNSEL]: Okay. Were you aware on that day that [the informant] had charges pending against him in Phelps County?

[APPELLANT]: I can't recall. I know he'd been in some trouble, but I can't recall if he had any charges then or not.

Appellant further testified that the informant was a friend, and called Appellant and told him a friend's wife had cancer and had run out of pain medication. The informant asked Appellant if he could find pain medication for the woman. This request struck a chord with Appellant because Appellant has "seen quite a few people suffer from cancer, so I've tried to do anything I could do to help." Appellant asked his mother if she had "anything" for one of his friends who had cancer to help with pain. Appellant's mother then gave Appellant the pills he subsequently sold to Officer

Walker. The informant picked Appellant up and took him to meet Officer Walker. Appellant had no intention to sell drugs to anyone on that day before the informant called him. At the time of the sale, Appellant had a conviction for illegally possessing oxycontin.

Immediately before resting Appellant's evidence, trial defense counsel offered Defendant's Exhibits A and B into evidence. Counsel described Exhibit A as a certified copy of records from a 2008 criminal case against the informant in Phelps County that resulted in a conviction, and described Exhibit B as a certified copy of records from a 2007 criminal case against the informant in Phelps County that was dismissed in November 2008. The charges in these criminal cases were pending against the informant on June 23, 2008, and were felony charges for which the maximum, possible aggregate term of imprisonment was twenty-six years. Counsel argued to the trial court the exhibits were "relevant as to whether or not the jury will believe that somebody facing 26 years would be motivated to lie to my client to get him to go sell drugs. It makes—it's entrapment."

The State objected because the informant was not called as a witness at the trial. Defense counsel acknowledged that he did not subpoena the informant. Defense counsel also informed the trial court immediately before beginning Appellant's evidence, "I've told [the prosecutor] that her witnesses may be excused. I don't intend to call them back, Your Honor."

The trial court sustained the State's objection to Defendant's Exhibits A and B because the informant was not called as a witness, and also denied trial defense counsel's request to call an assistant prosecuting attorney as a witness to testify

about the dismissal of the 2007 criminal case against the informant because defense counsel did not endorse the assistant prosecuting attorney as a witness and the assistant prosecuting attorney had sat through the entire trial as a member of the prosecution team.[2]

In rebuttal, Officer Walker testified that he had met Appellant on two occasions before June 23, 2008. In January 2008, Officer Walker met Appellant at an apartment in Rolla. An individual with Officer Walker told Appellant that Officer Walker wanted to purchase heroin. Appellant told Officer Walker to wait in another room at the apartment. Officer Walker did as instructed, and a third person entered the room "a little bit later" and "delivered" heroin to him. Around the same time, Officer Walker observed Appellant at the same apartment where people "basically . . . were hanging out, doing drugs."

The jury found Appellant guilty, and assessed punishment at imprisonment for ten years. The trial court subsequently sentenced Appellant to imprisonment for ten years.

*The Trial Court Did Not Err in Excluding Cumulative Evidence, and, if the Trial Court Did Err, the Error Did Not Prejudice Appellant*

### Standard of Review

We review a trial court's decision to exclude evidence for abuse of discretion and resulting prejudice. *State v. Wolfe,* No. SD 27953, 2011 WL 2135637, at *14 (Mo.App. S.D. May 31, 2011); *State v. Mason,* 95 S.W.3d 206, 211 (Mo.App. S.D. 2003); *State v. Barriner,* 111 S.W.3d 396, 401 n. 4 (Mo. banc 2003). "A trial court

---

2. Appellant renewed his claim that the exhibits were admissible because the exhibits were relevant to Appellant's defense of entrapment

in his motion for judgment of acquittal or, in the alternative, new trial, and at sentencing.

abuses its discretion in excluding evidence if its decision shocks the sense of justice or indicates an absence of careful consideration." *State v. Wolfe*, 2011 WL 2135637 at *14. A trial court does not abuse its discretion when it excludes evidence that is merely cumulative to other admitted evidence. *Id.*; *State v. Mason*, 95 S.W.3d at 211.

Trial court error in excluding admissible evidence in a criminal case creates a rebuttable presumption of prejudice. *State v. Hopper*, 315 S.W.3d 361, 367 (Mo.App. S.D.2010); *Barriner*, 111 S.W.3d at 401. When the error was preserved, the State must show the error was harmless beyond a reasonable doubt to rebut the presumption of prejudice. *Hopper*, 315 S.W.3d at 367; *State v. Sanders*, 126 S.W.3d 5, 23 (Mo.App. W.D.2003).

### Analysis

In his sole point relied on, Appellant claims that the trial court erred in denying Appellant's request to admit Defendant's Exhibits A and B into evidence. Appellant argues that the exhibits "were relevant to corroborate [Appellant's] defense of entrapment by showing [the informant's] motivation to get [Appellant] to sell drugs and thereby lessen his own punishment."

Under the instructions in this case, the State had to prove beyond a reasonable doubt that Appellant was not entrapped. The instructions informed the jury that a person is entrapped "if a person acting in cooperation with a law enforcement officer, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person into engaging in conduct when he is not ready and willing to engage in such conduct."

■ Evidence must be both logically and legally relevant to be admissible. *Barriner*, 111 S.W.3d at 400–01. Evidence is logically relevant if the evidence tends to make the existence of any fact that is of consequence to the determination of the case more or less probable. *Id.* Evidence is legally relevant if its probative value outweighs its costs including cumulativeness. *Id.* at 401.

We agree with Appellant that Defendant's Exhibits A and B were logically relevant to Appellant's defense of entrapment. The exhibits were certified copies of court records that showed felony criminal charges were pending against the informant on June 23, 2008. These records showed the informant had a possible motive to "solicit" or "encourage" Appellant to sell prescription drugs to Officer Walker illegally in order to obtain leniency on his own pending criminal charges. The possibility of a motive made it more probable that the informant in fact solicited or encouraged Appellant to engage in criminal conduct. That fact was of consequence to Appellant's defense of entrapment as it was one of two facts that must exist for the defense of entrapment to apply—the second fact being that Appellant was not ready and willing to engage in the criminal conduct.

■ However, though we agree the exhibits were logically relevant, the exhibits were not legally relevant because the exhibits were cumulative to other admitted evidence, and the exhibits' cumulativeness outweighed the exhibits' probative value. The admitted evidence in the case was undisputed that Officer Walker was working with the informant as an undercover officer, and that the informant initiated and arranged the sale in conversations with Appellant that Officer Walker did not participate in or record. It also was undisputed that the informant brought Appellant to the park, and was present at the park for the sale. Finally, Appellant testi-

fied that he knew the informant had "been in some trouble," but could not recall if the informant had charges pending at the time of the sale. The evidence that the informant was working with Officer Walker to arrange transactions involving illegal drugs establishes that the informant had a motive to "solicit" and "encourage" Appellant, as well as others, to engage in criminal conduct. This evidence of motive is corroborated by Appellant's testimony that he knew the informant had been in some trouble. And, the undisputed evidence the informant alone initiated and arranged the sale with Appellant and brought Appellant to the sale showed overwhelmingly that the informant in fact did "solicit" and "encourage" Appellant to engage in the sale.[3] In these circumstances, the excluded exhibits were merely cumulative to other admitted evidence of the informant's motive to "solicit" and "encourage" Appellant to engage in criminal conduct, and to other admitted and undisputed evidence that the informant in fact did solicit and encourage Appellant to engage in the illegal sale of prescription medicine to Officer Walker—the ultimate fact Appellant sought to show.[4] As a result, the trial court did not abuse its discretion in excluding the cumulative exhibits.

■ Even if the exhibits were legally relevant and should have been admitted, any error was harmless beyond a reasonable doubt and did not prejudice Appellant.[5] The reason is that the evidence was overwhelming and uncontroverted that Appellant was ready and willing to sell prescription medicine to Officer Walker illegally—a fact that precludes entrapment and makes any error with respect to evidence that the informant "solicited" and "encouraged" Appellant harmless beyond a reasonable doubt.

The audio recording of the sale was admitted into evidence and played for the jury. The recording clearly demonstrates that Appellant was ready and willing to sell the prescription medicine to Office Walker, and contains absolutely no indication that Appellant was engaging in the sale involuntarily. Appellant's willingness as reflected in the recording is corroborated by the following evidence. Appellant promptly obtained prescription medicine on the informant's request and supplied it to Officer Walker. Appellant testified he had been convicted of illegally possessing

---

**3.** Informant and/or undercover officer initiated drug transactions would seem almost always to satisfy this prong of entrapment. *See, e.g., State v. Mitchell*, 897 S.W.2d 187, 192 (Mo.App. S.D.1995).

**4.** The trial court did not exclude the exhibits on the ground the exhibits were not legally relevant. We suspect that may be because of the State's objection to the exhibits and Appellant's response to the objection. When Appellant referred to, and attempted to introduce, the exhibits, the State objected on the ground the exhibits were admissible only to impeach the informant and the informant was not a witness at trial. In addition to noting that the exhibits were relevant to his defense of entrapment, Appellant responded to this objection by referring the trial court to *State v. Joiner*, 823 S.W.2d 50 (Mo.App. E.D.1991),

both at trial and at sentencing. *Joiner* addresses the use of a witness's pending criminal charges to show the witness's bias in favor of the prosecution. *Joiner*, 823 S.W.2d at 52–55. Of course, we may affirm a trial court's ruling on the admissibility of evidence under any valid theory. *State v. Mort*, 321 S.W.3d 471, 483 (Mo.App. S.D.2010).

**5.** Although Appellant did not establish any evidentiary foundation for the exhibits beyond the fact the exhibits were certified copies, it appears that was the only evidentiary foundation necessary and the exhibits were admissible under § 490.130, RSMo Cum.Supp.2001, so long as the exhibits were logically and legally relevant. *See Hadlock v. Director of Revenue*, 860 S.W.2d 335, 337 n. 4 (Mo. banc 1993).

oxycontin before the sale. Officer Walker testified that he had met Appellant on two occasions a few months before the sale. On one occasion, Appellant was at an apartment and was informed Officer Walker wanted to purchase heroin. Appellant then told Office Walker to wait in another room where a second person sold Officer Walker heroin. On the other occasion, Appellant was at the same apartment and people were using drugs. All of these facts are evidence Appellant was ready and willing to sell Officer Walker prescription medicine on June 23, 2008, and each of these facts is sufficient to permit a jury to reject a defense of entrapment. *See Mitchell,* 897 S.W.2d at 192.

Appellant claims the evidence showing Appellant was ready and willing to sell prescription medicine to Officer Walker was controverted because Appellant testified (1) he had no intention to sell drugs to anyone on that day before the informant called him, and (2) he was trying to help Officer Walker because Appellant thought Officer Walker was obtaining the prescription medicine for his wife who was suffering from cancer and had run out of medicine. Even if true, these claims say nothing about Appellant's willingness to sell prescription medicine to Officer Walker. The fact that Appellant did not intend to sell drugs that day before being contacted by the informant indicates only what Appellant's intention was in the absence of an opportunity to in fact sell drugs. As the evidence showed, Appellant promptly changed his mind when presented with an opportunity. Likewise, a motivation to help a seriously ill person illegally acquire prescription medicine does not make Appellant's conduct involuntary; it only explains why Appellant was ready and willing to act.

Any error in excluding evidence relevant to whether the informant "solicited" and "encouraged" Appellant to sell prescription medicine to Officer Walker was harmless beyond a reasonable doubt because the evidence was overwhelming and uncontroverted that Appellant was ready and willing to sell prescription medicine to Officer Walker illegally. Appellant's point is denied.

The trial court's judgment is affirmed.

BURRELL, C.J., P.J., and LYNCH, J., concur.